Daniel Anthony DOTSON, M. D. et al., Petitioners,

v.

TEXAS STATE BOARD OF MEDICAL EXAMINERS, Respondent.

No. B–9952.

Supreme Court of Texas.

March 4, 1981.

Rehearing Denied April 1, 1981.

Stubbeman, McRae, Sealy, Laughlin & Browder, Tom Sealy and Joe R. Greenhill, Jr., Austin, Neal, Sweatt & Teis, Graham, for petitioners.

Mark White, Atty. Gen., Bill Campbell, Asst. Atty. Gen., Austin, for respondent.

BARROW, Justice.

Petitioners, Beverly Ann Dotson, M.D. and Daniel Anthony Dotson, M.D., appealed from orders of respondent, Texas State Board of Medical Examiners, suspending their licenses to practice medicine for ten years and five years respectively. The suspensions of both doctors were probated under certain stated terms and conditions. The trial court sustained the Board's orders and the court of civil appeals affirmed. 607 S.W.2d 36. We reverse the judgments of the courts below and render judgment vacating the orders of suspension.

The Board found that on twelve stated occasions Dr. Beverly Dotson (Dr. Beverly) prescribed drugs for John T. Richter, alias Johnny Kyle, in a non-therapeutic manner in that Richter had no illness, injury or disease for which the drugs would have had any therapeutic value. The Board further found that on one occasion Dr. Dan Dotson (Dr. Dan) prescribed drugs for Richter and on four occasions he prescribed drugs for Barbara Foreman, alias Brandie Hart, in a

non-therapeutic manner in that Richter and Foreman had no illness, injury or disease for which the drugs would have had any therapeutic value. The Board concluded that both doctors had issued those prescriptions in a non-therapeutic manner in violation of Article 4505(4)(E)[1] and therefore suspended the license of each doctor as authorized by Article 4506.

Article 4506, as amended in 1967, authorizes an appeal from such orders of license suspension under the "substantial evidence rule." Our guidelines for review of this type appeal are set forth in Section 19 of the Administrative Procedure and Texas Register Act, (APA), Article 6252–13a. The review is conducted by the court sitting without a jury and is confined to the record made before the agency with certain exceptions not applicable here. The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions committed to agency discretion but may affirm the decision of the agency in whole or in part. The court shall reverse or remand the case for further proceedings if substantial rights of the appellant party have been prejudiced because the administrative findings, inferences, conclusions, or decisions are (as applicable here):

(5) not reasonably supported by substantial evidence in view of the reliable and probative evidence in the record as a whole; . . . .

The correct substantial evidence rule test is whether the evidence as a whole is such that reasonable minds could have reached the conclusion that the agency must have reached in order to justify its action. *See: Imperial Am. Resources Fund v. R. R. Com'n of Tex.,* 557 S.W.2d 280 (Tex.1977).

The record before the Board shows that the only evidence presented against either petitioner was the testimony of Richter and Foreman. Both of these persons were investigators for the Board who are specially trained in the art and technique of investigating medical professionals. The record does not reveal why Richter or Foreman was directed by a representative of the Board to go to the Dotson Clinic in Graham to investigate Dr. Beverly and Dr. Dan.[2] Nevertheless, the record shows that both Richter and Foreman carried out their undercover assignment of seeking to secure prescription drugs from Dr. Beverly and Dr. Dan through the use of deception.

Richter first contacted the Dotson Clinic on December 9, 1975. Dr. Beverly and Dr. Dan, who are husband and wife, have operated this general practice medical clinic in Graham since 1972. Richter filled out a patient information sheet under the name of "Johnny Kyle," with residence in Graham, and gave his occupation as that of an oil field worker. He advised the nurse that he was suffering from headaches and had so suffered for a long time. On subsequent visits, he was treated for obesity and depression. Although Richter requested to see Dr. Dan, he was sent to Dr. Beverly. He remained her patient during the course of his three year investigation, during which time she saw him thirteen times. However, he did see Dr. Dan on three or four occasions during this period for reasons which are not apparent in the record.

Barbara Foreman, who had worked for the Board as an investigator since 1977, first contacted the Dotson Clinic on September 15, 1978. She filled out a patient information sheet under the name of Brandie Hart, said she resided in Graham and worked as a waitress and salesclerk. She complained of inability to keep up with the two jobs she was required to maintain in order to support herself and her children. She was seen by Dr. Dan after an examina-

1. All statutory references are to Texas Revised Civil Statutes Annotated.

2. There is no contention that either Dr. Beverly or Dr. Dan were drug users or that they were engaged in any illegal drug operation. The prescriptions were not to be filled by the Dotson Clinic or any pharmacy owned wholly or in part by the doctors. They were paid $178.00 for the treatment of both investigators over the three years.

tion by a nurse. She was treated for fatigue and depression.

Both doctors first prescribed a non-controlled drug, but after the patients complained in subsequent visits that this medication was not giving any relief, the doctors prescribed a controlled drug as requested by the patient.[3] Since neither investigator took any of the prescribed drugs, the doctors obviously could detect no signs of addiction or ill effects. Both investigators told their respective doctor that they were doing well under their medication program.

The record establishes that Dr. Beverly and Dr. Dan prescribed the drugs at the times, dosages and amounts as found by the Board. The problem is that there is no expert testimony to support the Board's factual conclusion that these drugs were non-therapeutic in the manner such drugs were prescribed by either of these doctors. It should be recognized at the outset that each of these controlled drugs (Preludin, Valium, Ritalin and Elavil) is a legitimately manufactured prescription drug authorized for use by the Food and Drug Administration and that both doctors were authorized to prescribe each. Both Richter and Foreman falsified symptoms concerning their physical condition in order to secure these prescriptions. Although the Board knew at the time of the hearing that neither Richter nor Foreman suffered from any apparent illness, disease or injury at the time of their visits to the Dotson Clinic, there is no evidence that Dr. Beverly or Dr. Dan knew these persons were not bona fide patients with legitimate complaints. Nor is there any expert testimony in the record to support a conclusion that either should have known.

The uncontroverted testimony of Dr. Beverly and Dr. Dan is that the drugs were proper medications for the conditions as diagnosed by each doctor and the amounts prescribed were not excessive. This testimony was corroborated by Dr. Irby Fox, M.D., who was permitted to listen to all the testimony presented to the Board. Dr. Fox testified that each of these drugs was used

by him in his general practice in Abilene and each is therapeutic in nature. The investigators testified that they did not know the "therapeutic" use of any of the drugs.

■ It is urged by the Board that, since all members of the Board are professionals, it was not necessary to introduce expert testimony that these drugs were not therapeutic as prescribed. The difficulty with this contention is that the APA limits the court's review to the record as made before the Board. A court obviously cannot review knowledge, however expert, that is only in the minds of one or more members. Section 14(q) of Article 6252–13a (APA) expressly allows an agency to take official notice of facts only in the following manner:

In connection with any hearing held under the provisions of this Act, official notice may be taken of all facts judicially cognizable. In addition, notice may be taken of generally recognized facts within the area of the agency's specialized knowledge. Parties shall be notified either before or during the hearing, or by reference in preliminary reports or otherwise, of the material officially noticed, including any staff memoranda or data, and they must be afforded an opportunity to contest the material so noticed. The special skills or knowledge of the agency and its staff may be utilized in evaluating the evidence.

There was no attempt by the Board to comply with this section. Furthermore, a party must be accorded the right to cross-examine and rebut adverse evidence. *See* Article 6252–13a, Sections 13(g) and 14(p); *Richardson v. City of Pasadena*, 513 S.W.2d 1 (Tex.1974); McCormick on Evidence § 353 (2nd ed. 1972).

The Board urges that expert testimony was not required to support its findings here under the holdings in *Martinez v. Texas State Board of Medical Examiners*, 476 S.W.2d 400 (Tex.Civ.App.—San Antonio, writ ref'd n. r. e.), *cert. denied*, 409 U.S.

---

3. *See* Controlled Substances Act, Article 4476–15.

**924**

1020, 93 S.Ct. 463, 34 L.Ed.2d 312 (1972) and *Conley v. Texas State Bd. of Medical Exam.*, 605 S.W.2d 699 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n. r. e.).

In *Martinez, supra*, it was recognized that expert testimony was not required to establish that a doctor's acts in having carnal knowledge of two young patients constituted grossly unprofessional or dishonorable conduct. It was held, however, that expert testimony was relevant and properly admitted regarding the charge that the doctor had improperly prescribed drugs.

The Board's reliance on *Conley, supra*, is misplaced. Although the court there did state that it was not necessary to introduce expert testimony about medical standards that had been breached, such statement is dictum in that the court went on to point out that there was considerable testimony before the Board by members of the medical profession that pointed to a substantial deviation by Dr. Conley from acceptable medical standards.

We conclude that there is no substantial evidence in the record to support the orders of the Board suspending the licenses of Dr. Beverly Dotson and Dr. Dan Dotson. It is, therefore, unnecessary to consider the other points urged by petitioners and we express no opinion as to the holding of the court of civil appeals thereon.

We reverse the judgment of the lower courts and render judgment that said orders of the Board suspending the medical licenses of Dr. Beverly Dotson and Dr. Dan Dotson be vacated.

GREENHILL, C. J., not sitting.