casey 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-596-CV





JAMES GORDON CASEY,



 
 APPELLANT


vs.





TEXAS STATE BOARD OF MEDICAL EXAMINERS,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT



NO. 92-16448, HONORABLE PAUL R. DAVIS, JUDGE PRESIDING



 




 The Texas State Board of Medical Examiners (the Board) revoked Dr. James
Gordon Casey's medical license. Dr. Casey sought judicial review in district court. The trial
court affirmed the order and Dr. Casey appeals. We will affirm the trial-court judgment.



BACKGROUND


 The Board revoked Dr. Casey's medical license for engaging in unprofessional and
dishonorable conduct likely to injure the public. See Act of June 14, 1985, 69th Leg., R.S., ch.
661, § 4, 1985 Tex. Gen. Laws 2422, 2423 (Tex. Rev. Civ. Stat. art. 4495b, § 3.08(4), since
amended). The Board found that Dr. Casey had a doctor-patient relationship with S.C. from
November 1986 through March 1988, treating her for her depression and/or unknown emotional
or mental disorders by counseling her and prescribing various medications for her. The Board
also found that during this period, Dr. Casey engaged in a sexual relationship with S.C. and that
this inappropriate sexual relationship caused her emotional condition to worsen. It further found
that it is a violation of accepted professional ethics and the accepted standard of care for a
physician in Texas to engage in a sexual relationship with a patient, and that such conduct is likely
to injure the public. 

 Dr. Casey sought a substantial evidence review of the Board's order. Tex. Rev.
Civ. Stat. Ann. art. 4495b, § 4.09(b) (West 1994); Administrative Procedure Act, Tex. Gov't
Code Ann. § 2001.174 (West 1994). (1) The trial court affirmed the Board's decision. On appeal,
Dr. Casey asserts one point of error comprising four subpoints. In subpoints A and B, Dr. Casey
argues that certain findings are not supported by substantial evidence. Subpoint A challenges the
Board's finding that Dr. Casey took advantage of patient S.C. through a personal relationship. 
Subpoint B challenges the Board's finding that S.C.'s condition deteriorated throughout the period
of their personal relationship. In subpoint C, Dr. Casey argues that the Board's conclusion that
Dr. Casey's conduct is likely to injure the public is not supported by substantial evidence. 
Finally, in subpoint D, Dr. Casey argues that the revocation of his license is arbitrary and
capricious. 



DISCUSSION


 The Administrative Procedure Act (APA) authorizes a reviewing court to test an
agency's findings, inferences, conclusions, and decisions to determine whether they are reasonably
supported by substantial evidence in view of the reliable and probative evidence in the record as
a whole. APA § 2001.174; Texas Health Facilities Comm'n v. Charter Medical-Dallas, Inc., 665
S.W.2d 446, 452 (Tex. 1984). The agency's action will be sustained if the evidence is such that
reasonable minds could have reached the conclusion the agency must have reached in order to
justify its action. Id. at 453; Dotson v. Texas State Bd. of Medical Examiners, 612 S.W.2d 921,
922 (Tex. 1981).

 Dr. Casey challenges part of Board finding number seventeen which states that Dr.
Casey took advantage of S.C.'s vulnerability. (2) Similarly, he challenges part of Board finding
number thirty-two which states that Dr. Casey's inappropriate sexual relationship with S.C.
caused her emotional condition to worsen. (3) He argues there is no evidence that S.C's condition
became worse after her relationship with Dr. Casey ended.

 S.C. testified that she first went to see Dr. Casey for temporomandibular joint
syndrome (TMJ), because she was suffering from severe headaches, ringing in the ears, and
severe depression. She stated that her emotional state was not good, and that she was
contemplating suicide during this time. Dr. Casey admitted having a patient-physician relationship
with her from November of 1986 into 1988, and to prescribing various medications for her. Dr.
Casey admitted that he knew about S.C.'s suicidal history before he saw her; he also agreed that
he had told S.C's sister within seventy-two hours of S.C.'s initial visit that S.C. was in life-threatening danger due to her psychiatric or psychological problems. Dr. Casey stated that he did
not treat S.C.'s TMJ, but treated her mental condition. In addition, one exhibit showed that
during their relationship, Dr. Casey prescribed numerous drugs for S.C.. such as Betalin, Ativan,
Vicodin, Tofranil, Sumycin, Inderal, and Persantine. Dr. Casey testified that he is not qualified
to do formal counseling. 

 S.C. testified that during this period while she was his patient, she and Dr. Casey
had sexual intercourse in several motels. S.C. explained what Dr. Casey told her the first time
the two went to a motel: "I got under the covers; he kept telling me he would not touch me. And
he kept talking to me about what had happened to me and that my in-laws were being unkind to
me and that they hadn't accepted me, they would never accept me, and that my husband didn't
really want me and my kids didn't need me . . . And he told me he understood my problem and
he knew that I was--he knew what I was going through because he knew a lot about TMJ." S.C.
said that Dr. Casey would tell her she belonged to him and that she did not think properly. S.C.'s
diary entries were admitted into evidence, demonstrating her dependence on Dr. Casey. She
wrote about Dr. Casey, "He's the only one who cares for me," "He's my support system," and
"I don't trust anyone but him." 

 S.C.'s husband testified that he confronted S.C. at a motel with Dr. Casey,
threatening divorce if she did not leave the motel and go with her husband. He believed that her
relationship with Dr. Casey had a bad effect on their marriage and that "her emotional condition
was worse than it was before he [Dr. Casey] stepped in." Similarly, Dr. Cathy Lou Simutis, a
psychologist, testified that S.C. was her patient for two years, beginning in September 1989, after
S.C. and Dr. Casey's patient/physician relationship had ended. Dr. Simutis concluded that S.C.
had been traumatized by her relationship with Dr. Casey. She testified about her impressions of
their relationship based on her counseling with S.C. It was her impression that the relationship
was one in which S.C. saw Dr. Casey as having control over her, that the relationship was sexual,
and that Dr. Casey "was keeping her fairly high or loaded on the drugs and alcohol, which left
him in the position of control." Dr. Simutis also testified that S.C. "reported being very fearful
if she ever saw a man on the street or on a bus who appeared to be getting physically closer to
her, who physically reminded her of Dr. Casey. If he had grey hair she would have a panic
attack. She was having nightmares about Dr. Casey."

 Substantial evidence supports the Board's findings of S.C.'s vulnerability and
deterioration. From the evidence, reasonable minds could have reached the conclusion that S.C.
suffered from depression and suicidal tendencies, that Dr. Casey was aware of her weakened
condition, and chose to engage in a sexual relationship with her while prescribing various
medications for her. Reasonable minds could also have concluded from the evidence that S.C.
was traumatized by a controlling and sexual relationship with Dr. Casey, which affected her
family relationships and worsened her condition. We overrule subpoints A and B.

 In subpoint C, Dr. Casey argues that the Board's conclusion that his conduct is
likely to injure the public is not supported by substantial evidence. In support of this argument,
Dr. Casey asserts, "any conclusion that Dr. Casey poses a danger to the public, due to an ill-chosen friendship with a woman with psychological problems, is not a reasonable conclusion." 
 Dr. Casey admitted that he had a doctor-patient relationship with S.C. Patients of
a doctor are members of the public. Texas State Bd. of Medical Examiners. v. Koepsel, 322
S.W.2d 609, 611 (Tex. 1959) (holding that patients are members of the public within the meaning
of article 4505, section (4), the former version of section 3.08(4)). Thus, conduct likely to injure
S.C. as a patient, is conduct likely to injure the public. In its order, the Board stated, "Based on
the above Findings of Fact, the Board concludes that the Respondent by engaging in a sexual
relationship with S.C. during the course of the physician/patient relationship has engaged in
unprofessional and dishonorable conduct that is likely to injure the public in violation of § 3.08(4)
of the Act[.]" In support of this conclusion, the Board found that it is a violation of accepted
professional ethics and the accepted standard of care for a physician in Texas to engage in a sexual
relationship with a patient, and that such conduct is likely to injure the public. This finding was
supported by the testimony of Dr. McIntyre, a doctor in obstetrics and gynecology. Dr. McIntyre
was asked to assume that a doctor-patient relationship is established and the doctor travels with
the patient outside of the office setting and engages in sexual intercourse with that patient. Dr.
McIntyre testified that in his opinion the conduct was below the accepted standard of care in
Texas. When asked if he had an opinion as to whether that would constitute unprofessional or
dishonorable conduct likely to deceive, defraud, or otherwise injure the public, Dr. McIntyre
testified "yes," and said that it is not consistent with professional behavior and constitutes sexual
misconduct. 

 The conclusion of likely injury is further supported by the Board's underlying
finding that Dr. Casey's inappropriate sexual relationship with S.C. caused her emotional
condition to worsen, and that Dr. Casey initiated and continued a sexual relationship with S.C.
even though he was aware of her depression, suicidal ideation and emotional difficulties, and
while he was purportedly treating and counseling S.C. for such problems. As we have already
discussed in subpoint B, this underlying finding of deterioration is supported by substantial
evidence. Thus, the conclusion of likely injury is supported by fact findings which in turn are
supported by substantial evidence. The Board could reasonably conclude that engaging in a sexual
relationship with a suicidal patient is conduct likely to injure the public. We overrule subpoint
C.

 In subpoint D, Dr. Casey argues that the Board's decision to revoke his license is
arbitrary and capricious and an inappropriate and clearly unreasonable sanction under these facts. 
Dr. Casey argues that there is no evidence that Dr. Casey "is, was or ever can be a danger to the
public or his services perpetrate a fraud on the public. Therefore the order may be invalidated
even though there might be factual support for some or most of the findings of fact." He further
argues that the record is devoid of evidence that Dr. Casey intended injury to the public or
committed a fraud on the public in any way.

 The Board did not conclude that Dr. Casey's conduct was likely to deceive or
defraud the public, but that it was likely to injure the public. Neither the language of section
3.08(4), nor precedent, suggests that intent to cause injury must be shown. We have already
concluded that substantial evidence and underlying fact findings support the conclusion that Dr.
Casey's conduct was likely to injure the public. Moreover, section 4.12(a)(4) authorizes the
Board to revoke Dr. Casey's medical license for violating section 3.08(4). Tex. Rev. Civ. Stat.
Ann. art. 4495b, § 4.12(a)(4) (West 1994). 

 There are some circumstances in which substantial evidence supports agency action,
yet the agency action is arbitrary and capricious. Charter Medical-Dallas, 665 S.W.2d at 454;
Texas State Bd. of Dental Examiners v. Silagi, 766 S.W.2d 280, 285 (Tex. App.--El Paso 1989,
writ denied). Such circumstances include: a denial of due process that is prejudicial to the
litigant's substantial rights; failing totally to make findings of fact and basing a decision on
findings from another case; and improperly basing agency decision on non-statutory criteria. 
Charter Medical-Dallas, 665 S.W.2d at 454. The arbitrary and capricious standard has been
construed narrowly, requiring a violation of due process or other unfair or unreasonable conduct
that shocks the conscience. See Silagi, 766 S.W.2d at 285. 

 We conclude that the Board's revocation of Dr. Casey's license was not arbitrary
and capricious. The punishment was within the range authorized for the Board and the record
shows that Dr. Casey was afforded due process. There was no unusual conduct that would shock
the conscience. Rather, the Board's decision to revoke Dr. Casey's medical license was a
reasonable conclusion based on its finding that Dr. Casey engaged in unprofessional and
dishonorable conduct that is likely to injure the public in violation of section 3.08(4). We
overrule subpoint D. Having overruled all subpoints, we affirm the trial-court judgment.



 

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Aboussie and Kidd

Affirmed

Filed: August 17, 1994

Do Not Publish
1.   All citations in this opinion refer to the current Administrative Procedure Act,
rather than the former Administrative Procedure and Texas Register Act, because the
recent codification did not substantially change the law. Act of May 4, 1993, 73d Leg.,
R.S., ch. 268, § 47, 1993 Tex. Gen. Laws 583, 986; id. sec. 1, § 2001.001-.902, 1993 Tex.
Gen. Laws at 732-52 (to be codified as Administrative Procedure Act, Tex. Gov't Code Ann.
§ 2001.001-.902) [APA].
2.   Finding number seventeen states: "S.C. felt increasingly isolated from family and
friends, because of Dr. Casey's not infrequent statements to her that no one else cared for
her as he did, that her family members and friends could not be relied upon to help and
support her, that she did not think properly, and that he was the only one who could help
her. She became increasingly dependent on Casey and he took advantage of her
vulnerability, decreasing her trust in others and increasing her trust in him."
3.   Finding number thirty-two states: "Dr. Casey's inappropriate sexual relationship
with S.C. caused her emotional condition to worsen; he took advantage of her while she
was in a vulnerable state, and caused injury to her emotional well-being by his actions
with her that occurred during the course of the physician/patient relationship. Dr. Casey
initiated and continued a sexual relationship with S.C. even though he was aware of her
depression, suicidal ideation and emotional difficulties, and while he was purportedly
treating and counseling S.C. for such problems."