goettman v. twc

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-02-073-CV

RANDAL EUGENE GOETTMAN APPELLANT

V.

TEXAS WORKFORCE COMMISSION APPELLEES

AND CONTINENTAL REHAB OF 

WICHITA FALLS, INC.

------------

FROM COUNTY COURT AT LAW NO. 2 OF WICHITA COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  INTRODUCTION

Randal Eugene Goettman appealed to the County Court at Law No. 2 of Wichita County from administrative proceedings that denied him unemployment benefits.  He now appeals to this court from a summary judgment rendered in favor of the Texas Workforce Commission (“TWC”) and Goettman’s former employer, Continental Rehab of Wichita Falls, Inc. (“Continental Rehab”).  In one issue, Goettman complains that there was no substantial evidence in support of TWC’s decision.  We affirm.

II.  FACTUAL AND PROCEDURAL BACKGROUND

Goettman was employed as a maintenance technician at the Wichita Falls Rehabilitation Hospital, which is owned by Continental Rehab.  On August 28, 1997, Kay McIlwain, an occupational therapist at Continental Rehab, reported to her supervisors that Goettman had made sexual remarks, noises, and gestures with a soap dispenser in front her, other hospital employees, and patients the previous day.  Continental Rehab conducted an investigation, in which it interviewed and took statements from people who had observed the incident. 

According to McIlwain, Goettman was repairing a soap dispenser mounted above a sink located in an open gym area.  As McIlwain approached the sink to wash her hands, she indicated to Goettman that she needed some soap.  Goettman took the small rubber hose that had been part of the soap dispenser, held it above her hands, and stroked the hose back and forth to dispense liquid soap into her hands.  McIlwain stated that, as Goettman primed the soap tube, he made increasingly loud moaning and groaning noises.  This went on for several seconds, before Goettman squeezed the soap out of the tube into her hands and moaned something like, “Ooh ooh, ahh ahh, yes yes.”  McIlwain reported that when Goettman finished, he said, “It was great for me.  Was it good for you, too?”  McIlwain stated that she believed Goettman was trying to simulate masturbation and orgasm noises and said that his conduct made her feel uncomfortable and offended her.

Other patients and staff members were in the vicinity of the sink when Goettman was dispensing the soap and perceived Goettman’s conduct as being sexual in nature.  For example, Susan Stewart Fox, another occupational therapist, observed Goettman’s manipulation of the soap tube and heard him moaning and groaning.  According to Fox, patients at her treatment table were staring in the direction of the sink as Goettman moaned and groaned.  Fox also
 stated that she believed Goettman was trying to simulate masturbation and said that she was offended by his actions.

Goettman steadfastly denied that he intended his actions to be taken as sexual in nature; however, he admitted that the incident happened “pretty much like [his former co-workers] describ[ed] it.”  In a written statement, Goettman acknowledged that he manipulated the tube in a fashion “similar to the action required to milk a dairy cow.”  Additionally, Goettman admitted that as McIlwain was washing her hands and working up a little lather, he made the noises “Oh, awe, yes, yes.”  Later, Goettman claimed that he was merely trying to imitate a Clairol Herbal Essence Shampoo commercial
, which he had seen on television.  Goettman stated that his “only intention was a simple, cute gesture to try to get this lady to smile.”

Two days after Goettman’s display, and following a full investigation, Continental Rehab terminated Goettman’s employment.  Continental Rehab’s Human Resources Coordinator Kathleen Pirtle eventually told TWC that Goettman was fired after Continental Rehab determined that he had violated the hospital’s policy against sexual harassment, a policy which all employees are given and familiarized with during their orientation.
(footnote: 2)  Goettman then applied for unemployment benefits with TWC, but TWC found him to be statutorily disqualified to receive such benefits since he had been discharged for misconduct connected with his employment at Continental Rehab.  
See
 
Tex. Lab. Code Ann. 
§ 207.044 (Vernon 1996).  Goettman appealed the denial of benefits to the TWC Appeals Tribunal, which conducted a telephone hearing and affirmed the denial of benefits.  Thereafter, Goettman appealed his denial to the full Commission, which unanimously affirmed the Appeal Tribunal’s decision.

Goettman timely filed a petition for trial de novo against TWC and Continental Rehab in the County Court at Law No. 2 of Wichita County, alleging that TWC had wrongfully denied his claim for unemployment benefits.  In January 2002, the trial court granted TWC and Continental Rehab’s motion for summary judgment, therein affirming TWC’s decision to deny Goettman’s claim for unemployment benefits.

III.  LEGAL ANALYSIS

In his sole issue, Goettman complains that the trial court erred in granting TWC and Continental Rehab’s motion for summary judgment.  Goettman contends that there was no substantial evidence to support the decision of TWC.  We disagree.

A.  Substantial Evidence Review

Judicial review of an administrative decision regarding a former employee’s right to unemployment benefits requires a trial de novo with substantial evidence review.  
Tex. Lab. Code Ann. 
§ 212.202; 
Collingsworth Gen. Hosp. v. Hunnicutt
, 988 S.W.2d 706, 708 (Tex. 1998); 
Mercer v. Ross
, 701 S.W.2d 830, 831 (Tex. 1986);
 
Edwards v. Tex. Employment Comm’n
, 936 S.W.2d 462, 465 (Tex. App.—Fort Worth 1996, no writ).  Under this standard, TWC’s ruling is presumptively valid, which places the burden on the party challenging the agency decision.  
Collingsworth Gen. Hosp.
, 988 S.W.2d at 708. 

When the trial court examines whether there is substantial evidence to support an agency’s decision, it determines whether reasonable minds could have reached the same conclusion the agency reached.  
Dotson v. Tex. State Bd. of Med. Exam’rs
, 612 S.W.2d 921, 922 (Tex. 1981); 
Edwards
, 936 S.W.2d at 465.  While the court will hear and consider evidence to determine whether reasonable support for the agency’s order exists, the agency remains the primary fact finding body, and the question for the trial court is strictly one of law.  
Firemen’s & Policemen’s Civil Serv. Comm’n v. Brinkmeyer
, 662 S.W.2d 953, 956 (Tex. 1984); 
Edwards
, 936 S.W.2d at 465.  The challenging party must therefore produce evidence that conclusively negates all reasonable support for the agency’s decision, on any possible ground.  
Brinkmeyer
, 662 S.W.2d at 956; 
Edwards
, 936 S.W.2d at 465-66.

The trial court may not set aside a TWC decision merely because there was conflicting or disputed testimony or because the court would reach a different conclusion.  
Mercer
, 701 S.W.2d at 831; 
Edwards
, 936 S.W.2d at 465.  Rather, if the agency heard substantial evidence supporting either an affirmative or a negative finding, the trial court must allow the agency’s order to stand.  
Mercer
, 701 S.W.2d at 831; 
Edwards
, 936 S.W.2d at 465.  In fact, because substantial evidence is more than a mere scintilla, but less than a preponderance, the evidence may preponderate against the decision of the agency, but still amount to substantial evidence.  
City of Houston v. Tippy
, 991 S.W.2d 330, 334 (Tex. App.—Houston [1
st
 Dist.] 1999, no pet.).  The court may only set aside the agency’s decision if it finds the decision “to have been made without regard to the law or the facts and therefore was unreasonable, arbitrary, or capricious.”  
Mercer
, 701 S.W.2d at 831; 
Edwards
, 936 S.W.2d at 466.

B.  Summary Judgment

As one court of appeals has noted, “appeals under substantial evidence review are uniquely suited to summary judgment because the only issue before the court is a question of law.”
  Arrellano v. Tex. Employment Comm’n
, 810 S.W.2d 767, 771 (Tex. App.—San Antonio 1991, writ denied); 
see also Brinkmeyer
, 662 S.W.2d at 956.  The standards for reviewing a traditional motion for summary judgment are well established:  

(1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; 

(2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and 

(3) Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in his favor.  

Nixon v. Mr. Prop. Mgmt. Co.
, 690 S.W.2d 546, 548-49 (Tex. 1985).  A summary judgment must be affirmed on appeal if any ground asserted in the motion is a valid basis for rendering summary judgment.  
Cincinnati Life Ins. Co. v. Cates
, 927 S.W.2d 623, 626 (Tex. 1996).

C.  Application of Law to Facts

Section 207.044 of the Texas Labor Code states, ”An individual is disqualified for [unemployment] benefits if the individual was discharged for misconduct connected with the individual’s last work.”  
Tex. Lab. Code Ann. 
§ 207.044(a).  “Misconduct” is defined in the labor code as follows: 

mismanagement of a position of employment by action or inaction, neglect that jeopardizes the life or property of another, intentional wrongdoing or malfeasance, intentional violation of a law, or violation of a policy or rule adopted to ensure the orderly work and the safety of employees.

Id
. § 201.012(a).  Further, an employer is not required to prove intent with respect to misconduct arising from the violation of a company policy or rule.  
See Mercer
, 701 S.W.2d at 831; 
Lairson v. Tex. Employment Comm’n
, 742 S.W.2d 99, 101 (Tex. App.—Fort Worth 1987, no writ).

In determining whether there is substantial evidence to support TWC’s decision, we look at the evidence presented at the trial de novo, not at the record created by the administrative agency, unless the administrative record was properly introduced in the trial court.  
See Mercer, 
701 S.W.2d
 at 831
; 
Tippy
, 991 S.W.2d at 334.  The summary judgment evidence consisted of affidavits from McIlwain and Fox and a certified copy of the administrative record, which included copies of, among other things: the Appeal Tribunal’s decision, Goettman’s handwritten statement given to Continental Rehab, Continental Rehab’s sexual harassment and disciplinary policies, notes from Pirtle concerning Goettman’s termination, TWC’s fact finding notes between the agency and Pirtle, and tapes of Goettman’s telephone hearing.  In response to TWC and Continental Rehab’s motion for summary judgment, Goettman produced no evidence to meet his burden of conclusively negating all reasonable support for the agency’s decision.  
See Collingsworth Gen. Hosp.
, 988 S.W.2d at 708; 
Brinkmeyer
, 662 S.W.2d at 956; 
Edwards
, 936 S.W.2d at 465-66.  Instead, Goettman merely argued that the summary judgment evidence did not rise to the level of substantial evidence, a proposition with which we do not agree.
 

Based on the record before us, we hold that the trial court did not err in concluding, as a matter of law, that reasonable minds could have reached the same conclusion as TWC—that Goettman violated Continental Rehab’s policy against sexual harassment, which was adopted to ensure the orderly work and safety of employees.  
See
 
Dotson
, 612 S.W.2d at 922; 
Edwards
, 936 S.W.2d at 465.  As such, we further hold that there was substantial evidence to support TWC’s conclusion that Goettman committed misconduct in connection with his last work at Continental Rehab.  
See 
Tex. Lab. Code Ann. 
§ 201.012(a)
; Mercer
, 701 S.W.2d at 831; 
Edwards
, 936 S.W.2d at 468.  TWC and Continental Rehab thus presented a meritorious basis in moving for summary judgment, and summary judgment in their favor was proper.  Accordingly, we overrule Goettman’s sole issue.

IV.  CONCLUSION

Having overruled Goettman’s sole issue, we affirm the trial court’s judgment.

ANNE GARDNER

JUSTICE

PANEL B: 
DAUPHINOT, GARDNER, and WALKER, JJ.

[DELIVERED MARCH 13, 2003]

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
Continental Rehab’s sexual harassment policy stated, in pertinent part:

POLICY

All CMS employees will be treated with respect and dignity.  Each CMS employee must clearly communicate his/her disinterest in, or offense taken, with regard to any perceived verbal or physical harassment.  Sexual harassment of any employee by another employee, manager or supervisor will not be tolerated.

GUIDELINES

* It is prohibited for any employee, manager or supervisor, male or female, to harass another worker by making unwelcome sexual advances or offering favors of any type (verbal or physical) of a sexual nature.

. . . .

* It is prohibited for any individual to create an intimidating, hostile, or offensive work environment by engaging in such conduct.

. . . .

* Those employees who engage in sexual harassment 
will be subject to corrective action
 
up to and including discharge
.  [Emphasis added.]