COURT
OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-073-CV
 
RANDAL EUGENE GOETTMAN                                                                
APPELLANT
V.
TEXAS WORKFORCE
COMMISSION                                                          
APPELLEES
AND CONTINENTAL REHAB OF
WICHITA FALLS, INC.
------------
FROM COUNTY COURT AT LAW NO. 2 OF WICHITA COUNTY
------------
MEMORANDUM OPINION(1)
------------
I. INTRODUCTION
Randal Eugene Goettman appealed to the
County Court at Law No. 2 of Wichita County from administrative proceedings that
denied him unemployment benefits. He now appeals to this court from a summary
judgment rendered in favor of the Texas Workforce Commission ("TWC")
and Goettman's former employer, Continental Rehab of Wichita Falls, Inc.
("Continental Rehab"). In one issue, Goettman complains that there was
no substantial evidence in support of TWC's decision. We affirm.
II. FACTUAL AND PROCEDURAL
BACKGROUND
Goettman was employed as a maintenance
technician at the Wichita Falls Rehabilitation Hospital, which is owned by
Continental Rehab. On August 28, 1997, Kay McIlwain, an occupational therapist
at Continental Rehab, reported to her supervisors that Goettman had made sexual
remarks, noises, and gestures with a soap dispenser in front her, other hospital
employees, and patients the previous day. Continental Rehab conducted an
investigation, in which it interviewed and took statements from people who had
observed the incident.
According to McIlwain, Goettman was
repairing a soap dispenser mounted above a sink located in an open gym area. As
McIlwain approached the sink to wash her hands, she indicated to Goettman that
she needed some soap. Goettman took the small rubber hose that had been part of
the soap dispenser, held it above her hands, and stroked the hose back and forth
to dispense liquid soap into her hands. McIlwain stated that, as Goettman primed
the soap tube, he made increasingly loud moaning and groaning noises. This went
on for several seconds, before Goettman squeezed the soap out of the tube into
her hands and moaned something like, "Ooh ooh, ahh ahh, yes yes."
McIlwain reported that when Goettman finished, he said, "It was great for
me. Was it good for you, too?" McIlwain stated that she believed Goettman
was trying to simulate masturbation and orgasm noises and said that his conduct
made her feel uncomfortable and offended her.
Other patients and staff members were in
the vicinity of the sink when Goettman was dispensing the soap and perceived
Goettman's conduct as being sexual in nature. For example, Susan Stewart Fox,
another occupational therapist, observed Goettman's manipulation of the soap
tube and heard him moaning and groaning. According to Fox, patients at her
treatment table were staring in the direction of the sink as Goettman moaned and
groaned. Fox also stated that she believed Goettman was trying to simulate
masturbation and said that she was offended by his actions.
Goettman steadfastly denied that he
intended his actions to be taken as sexual in nature; however, he admitted that
the incident happened "pretty much like [his former co-workers] describ[ed]
it." In a written statement, Goettman acknowledged that he manipulated the
tube in a fashion "similar to the action required to milk a dairy
cow." Additionally, Goettman admitted that as McIlwain was washing her
hands and working up a little lather, he made the noises "Oh, awe, yes,
yes." Later, Goettman claimed that he was merely trying to imitate a
Clairol Herbal Essence Shampoo commercial, which he had seen on television.
Goettman stated that his "only intention was a simple, cute gesture to try
to get this lady to smile."
Two days after Goettman's display, and
following a full investigation, Continental Rehab terminated Goettman's
employment. Continental Rehab's Human Resources Coordinator Kathleen Pirtle
eventually told TWC that Goettman was fired after Continental Rehab determined
that he had violated the hospital's policy against sexual harassment, a policy
which all employees are given and familiarized with during their orientation.(2)
Goettman then applied for unemployment benefits with TWC, but TWC found him to
be statutorily disqualified to receive such benefits since he had been
discharged for misconduct connected with his employment at Continental Rehab. See
Tex. Lab. Code Ann. § 207.044 (Vernon 1996). Goettman appealed the denial of
benefits to the TWC Appeals Tribunal, which conducted a telephone hearing and
affirmed the denial of benefits. Thereafter, Goettman appealed his denial to the
full Commission, which unanimously affirmed the Appeal Tribunal's decision.
Goettman timely filed a petition for trial
de novo against TWC and Continental Rehab in the County Court at Law No. 2 of
Wichita County, alleging that TWC had wrongfully denied his claim for
unemployment benefits. In January 2002, the trial court granted TWC and
Continental Rehab's motion for summary judgment, therein affirming TWC's
decision to deny Goettman's claim for unemployment benefits.
III. LEGAL ANALYSIS
In his sole issue, Goettman complains that
the trial court erred in granting TWC and Continental Rehab's motion for summary
judgment. Goettman contends that there was no substantial evidence to support
the decision of TWC. We disagree.
A. Substantial Evidence Review
Judicial review of an administrative
decision regarding a former employee's right to unemployment benefits requires a
trial de novo with substantial evidence review. Tex. Lab. Code Ann. § 212.202; Collingsworth
Gen. Hosp. v. Hunnicutt, 988 S.W.2d 706, 708 (Tex. 1998); Mercer v.
Ross, 701 S.W.2d 830, 831 (Tex. 1986); Edwards v. Tex. Employment
Comm'n, 936 S.W.2d 462, 465 (Tex. App.--Fort Worth 1996, no writ). Under
this standard, TWC's ruling is presumptively valid, which places the burden on
the party challenging the agency decision. Collingsworth Gen. Hosp.,
988 S.W.2d at 708.
When the trial court examines whether
there is substantial evidence to support an agency's decision, it determines
whether reasonable minds could have reached the same conclusion the agency
reached. Dotson v. Tex. State Bd. of Med. Exam'rs, 612 S.W.2d 921, 922
(Tex. 1981); Edwards, 936 S.W.2d at 465. While the court will hear and
consider evidence to determine whether reasonable support for the agency's order
exists, the agency remains the primary fact finding body, and the question for
the trial court is strictly one of law. Firemen's & Policemen's Civil
Serv. Comm'n v. Brinkmeyer, 662 S.W.2d 953, 956 (Tex. 1984); Edwards,
936 S.W.2d at 465. The challenging party must therefore produce evidence that
conclusively negates all reasonable support for the agency's decision, on any
possible ground. Brinkmeyer, 662 S.W.2d at 956; Edwards, 936
S.W.2d at 465-66.
The trial court may not set aside a TWC
decision merely because there was conflicting or disputed testimony or because
the court would reach a different conclusion. Mercer, 701 S.W.2d at
831; Edwards, 936 S.W.2d at 465. Rather, if the agency heard
substantial evidence supporting either an affirmative or a negative finding, the
trial court must allow the agency's order to stand. Mercer, 701 S.W.2d
at 831; Edwards, 936 S.W.2d at 465. In fact, because substantial
evidence is more than a mere scintilla, but less than a preponderance, the
evidence may preponderate against the decision of the agency, but still amount
to substantial evidence. City of Houston v. Tippy, 991 S.W.2d 330, 334
(Tex. App.--Houston [1st Dist.] 1999, no pet.). The court may only
set aside the agency's decision if it finds the decision "to have been made
without regard to the law or the facts and therefore was unreasonable,
arbitrary, or capricious." Mercer, 701 S.W.2d at 831; Edwards,
936 S.W.2d at 466.
B. Summary Judgment
As one court of appeals has noted,
"appeals under substantial evidence review are uniquely suited to summary
judgment because the only issue before the court is a question of law." Arrellano
v. Tex. Employment Comm'n, 810 S.W.2d 767, 771 (Tex. App.--San Antonio
1991, writ denied); see also Brinkmeyer, 662 S.W.2d at 956. The
standards for reviewing a traditional motion for summary judgment are well
established:

 
 (1) The movant for summary judgment
 has the burden of showing that there is no genuine issue of material fact
 and that it is entitled to judgment as a matter of law;
 (2) In deciding whether there is a
 disputed material fact issue precluding summary judgment, evidence favorable
 to the nonmovant will be taken as true; and
 (3) Every reasonable inference must be
 indulged in favor of the nonmovant and any doubts resolved in his favor.
 

Nixon v. Mr. Prop. Mgmt. Co., 690
S.W.2d 546, 548-49 (Tex. 1985). A summary judgment must be affirmed on appeal if
any ground asserted in the motion is a valid basis for rendering summary
judgment. Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 626 (Tex.
1996).
C. Application of Law to Facts
Section 207.044 of the Texas Labor Code
states, "An individual is disqualified for [unemployment] benefits if the
individual was discharged for misconduct connected with the individual's last
work." Tex. Lab. Code Ann. § 207.044(a). "Misconduct" is defined
in the labor code as follows:

 mismanagement of a position of
 employment by action or inaction, neglect that jeopardizes the life or
 property of another, intentional wrongdoing or malfeasance, intentional
 violation of a law, or violation of a policy or rule adopted to ensure the
 orderly work and the safety of employees.

Id. § 201.012(a). Further, an
employer is not required to prove intent with respect to misconduct arising from
the violation of a company policy or rule. See Mercer, 701 S.W.2d at
831; Lairson v. Tex. Employment Comm'n, 742 S.W.2d 99, 101 (Tex.
App.--Fort Worth 1987, no writ).
In determining whether there is
substantial evidence to support TWC's decision, we look at the evidence
presented at the trial de novo, not at the record created by the administrative
agency, unless the administrative record was properly introduced in the trial
court. See Mercer, 701 S.W.2d at 831; Tippy, 991 S.W.2d at
334. The summary judgment evidence consisted of affidavits from McIlwain and Fox
and a certified copy of the administrative record, which included copies of,
among other things: the Appeal Tribunal's decision, Goettman's handwritten
statement given to Continental Rehab, Continental Rehab's sexual harassment and
disciplinary policies, notes from Pirtle concerning Goettman's termination,
TWC's fact finding notes between the agency and Pirtle, and tapes of Goettman's
telephone hearing. In response to TWC and Continental Rehab's motion for summary
judgment, Goettman produced no evidence to meet his burden of conclusively
negating all reasonable support for the agency's decision. See Collingsworth
Gen. Hosp., 988 S.W.2d at 708; Brinkmeyer, 662 S.W.2d at 956; Edwards,
936 S.W.2d at 465-66. Instead, Goettman merely argued that the summary judgment
evidence did not rise to the level of substantial evidence, a proposition with
which we do not agree.
Based on the record before us, we hold
that the trial court did not err in concluding, as a matter of law, that
reasonable minds could have reached the same conclusion as TWC--that Goettman
violated Continental Rehab's policy against sexual harassment, which was adopted
to ensure the orderly work and safety of employees. See Dotson,
612 S.W.2d at 922; Edwards, 936 S.W.2d at 465. As such, we further hold
that there was substantial evidence to support TWC's conclusion that Goettman
committed misconduct in connection with his last work at Continental Rehab. See
Tex. Lab. Code Ann. § 201.012(a); Mercer, 701 S.W.2d at 831; Edwards,
936 S.W.2d at 468. TWC and Continental Rehab thus presented a meritorious basis
in moving for summary judgment, and summary judgment in their favor was proper.
Accordingly, we overrule Goettman's sole issue.
IV. CONCLUSION
Having overruled Goettman's sole issue, we
affirm the trial court's judgment.
 
                                                                       
ANNE GARDNER
                                                                       
JUSTICE
 
PANEL B: DAUPHINOT, GARDNER, and WALKER, JJ.
        [DELIVERED MARCH 13, 2003]

1. See Tex. R. App. P. 47.4.
2 Continental Rehab's sexual harassment policy stated, in
pertinent part:

 POLICY
 All CMS employees will be treated with respect and dignity. Each CMS
 employee must clearly communicate his/her disinterest in, or offense taken,
 with regard to any perceived verbal or physical harassment. Sexual harassment
 of any employee by another employee, manager or supervisor will not be
 tolerated.
 GUIDELINES
 
 *     It is prohibited for any employee, manager or
 supervisor, male or female, to harass
        another worker by making unwelcome sexual
 advances or offering favors of any
        type (verbal or physical) of a sexual
 nature.
 
 . . . .
 
 *     It is
 prohibited for any individual to create an intimidating, hostile, or offensive
        work environment by engaging in such
 conduct.
 
 . . . .
 
 *     Those employees
 who engage in sexual harassment will be subject to corrective
        action up to and including discharge.
 [Emphasis added.]