

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

**NO. 2-07-076-CV**

MILLER OF DENTON, LTD.                                    APPELLANT

V.

TEXAS WORKFORCE COMMISSION                               APPELLEES
AND MATTHEW L. BENNETT

------------

FROM COUNTY COURT AT LAW NO. 2 OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I.  Background

This is an unemployment benefits case.  Co-Appellee Matthew L. Bennett

("Bennett") applied to Co-Appellee Texas Workforce Commission ("TWC") for

unemployment benefits after being fired from Appellant Miller of Denton

("Miller").  TWC originally denied Bennett benefits, but TWC's appeal tribunal

---

[1] *See* TEX. R. APP. P. 47.4.

reversed that decision and determined that Bennett was not guilty of misconduct connected with his work as a delivery driver.

Bennett was making a delivery to a Wal-Mart store located in The Colony, Texas, when the events that led to him being fired from Miller occurred. Ms. Coxsey, an employee of Wal-Mart, testified at trial that Bennett had touched her in an unwanted and inappropriate manner—causing her to hit Bennett. Specifically, Coxsey complained that Bennett had shoved a candy wrapper down the front of her blouse. Bennett on the other hand, testified that he had merely placed a candy wrapper on Coxsey's shoulder as a joke. Coxsey told her manager of the incident, and Wal-Mart informed Miller that Bennett would not be allowed back into Wal-Mart. Furthermore, Wal-Mart informed Miller that if Miller continued to employ Bennett, Miller could lose Wal-Mart as a customer. The loss of Wal-Mart as a customer would have been a substantial loss of eight percent of Miller's sales as a beer delivery service.

Miller conducted an investigation into the events between Coxsey and Bennett and determined that Bennett had conducted himself in an inappropriate manner. Miller fired Bennett and Bennett filed for unemployment benefits with TWC. In response, Miller filed its "Employer response to Notice of Application" stating its reason for dismissing Bennett:

> [Bennett] conducted himself in a manner that adversely affected the company's best interest and reputation. [Bennett] touched a back door employee of an account in an inappropriate manner.

[Coxsey] felt [Bennett] sexual[ly] assaulted her after she told him to stop. [Bennett] was terminated immediately.

After TWC's appeal tribunal determined that Bennett was not guilty of misconduct, and therefore entitled to unemployment benefits, Miller appealed TWC's decision to the county court at law. Miller's petition stated that the TWC's appeal tribunal's findings of fact and conclusions of law were erroneously based on the wrong employer policy. Specifically, Miller contended that TWC's decision was based on Miller's sexual harassment policy as opposed to Miller's policy regarding misconduct adversely affecting the company's best interest and reputation. After a non-jury trial, the trial court entered a judgment affirming TWC's decision. Miller appealed.

## II.    Miller's Points of Error

In three points, Miller challenges the trial court's judgment. First, Miller argues that the trial court erred in upholding TWC's decision because substantial evidence shows that Bennett was properly terminated for misconduct as a matter of law and, therefore, a reasonable mind could not agree with TWC's ruling or the ruling of the trial court. Second, Miller argues that the trial court incorrectly upheld TWC's decision because there was not substantial evidence to support that decision; therefore, the decision was unreasonable, arbitrary, and capricious. Finally, Miller argues that the trial court and TWC relied on the wrong employer policy, ignored the Texas Labor Code's

3

definition of misconduct, and applied the wrong standard for misconduct. We affirm.

### III.  Standard of Review

Judicial review of an administrative decision regarding a former employee's right to unemployment benefits requires a trial de novo with substantial evidence review. TEX. LAB. CODE ANN. § 212.202 (Vernon 2006); *Collingsworth Gen. Hosp. v. Hunnicutt*, 988 S.W.2d 706, 708 (Tex. 1998); *Mercer v. Ross*, 701 S.W.2d 830, 831 (Tex. 1986); *Edwards v. Tex. Employment Comm'n*, 936 S.W.2d 462, 465 (Tex. App.—Fort Worth 1996, no writ). Under this standard, TWC's ruling is presumptively valid, which places the burden on the party challenging the agency decision. *Collingsworth Gen. Hosp.*, 988 S.W.2d at 708.

When the trial court examines whether there is substantial evidence to support an agency's decision, it determines whether reasonable minds could have reached the same conclusion the agency reached. *Dotson v. Tex. State Bd. of Med. Exam'rs*, 612 S.W.2d 921, 922 (Tex. 1981); *Edwards*, 936 S.W.2d at 465. While the court will hear and consider evidence to determine whether reasonable support for the agency's order exists, the agency remains the primary fact finding body, and the question for the trial court is strictly one of law. *Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984); *Edwards*, 936 S.W.2d at 465. The challenging

4

party must therefore produce evidence that conclusively negates all reasonable support for the agency's decision, on any possible ground. *Brinkmeyer*, 662 S.W.2d at 956; *Edwards*, 936 S.W.2d at 465-66.

The trial court may not set aside a TWC decision merely because there was conflicting or disputed testimony or because the court would reach a different conclusion. *Mercer*, 701 S.W.2d at 831; *Edwards*, 936 S.W.2d at 465. Rather, if the agency heard substantial evidence supporting either an affirmative or a negative finding, the trial court must allow the agency's order to stand. *Mercer*, 701 S.W.2d at 831; *Edwards*, 936 S.W.2d at 465. In fact, because substantial evidence is more than a mere scintilla, but less than a preponderance, the evidence may preponderate against the decision of the agency, but still amount to substantial evidence. *City of Houston v. Tippy*, 991 S.W.2d 330, 334 (Tex. App.—Houston [1st Dist.] 1999, no pet.). The court may only set aside the agency's decision if it finds the decision "to have been made without regard to the law or the facts and therefore was unreasonable, arbitrary, or capricious." *Mercer*, 701 S.W.2d at 831; *Edwards*, 936 S.W.2d at 466.

## IV. Discussion

All three of Miller's points can be condensed into the following statement: Considering Miller's policies and the labor code's definition of misconduct, no reasonable mind could uphold TWC's decision that Bennett's actions did not

5

adversely affect the best interest and reputation of Miller; therefore, Bennett was properly terminated and not entitled to unemployment benefits. We disagree.

The trial court found that there was substantial evidence to support TWC's decision that Bennett was entitled to unemployment benefits. We must look at the evidence presented to the trial court. *Nuernberg v. Texas Employment Comm'n*, 858 S.W.2d 364, 365 (Tex. 1993). In this case, the TWC's appeals tribunal's findings were admitted as evidence and considered by the trial court; we therefore will include it as part of our review. *See id.* However, the record of the TWC proceedings was not included and therefore will not be included as part of our review. *Id.*

The Texas Labor Code provides that an individual can be disqualified from unemployment benefits if the individual was "discharged for misconduct connected with the individual's last work." TEX. LAB. CODE ANN. § 207.044(a) (Vernon 2006). Further, the labor code provides that misconduct means "mismanagement of a position of employment by action or inaction, neglect that jeopardizes the life or property of another, intentional wrongdoing or malfeasance, intentional violation of a law, or violation of a policy or rule adopted to ensure the orderly work and the safety of employees." *Id.* § 201.012(a) (Vernon 2006). However, not every violation of an employer's policies will trigger denial of unemployment benefits. *Collingsworth Gen.*

6

*Hosp.*, 988 S.W.2d at 709; s*ee also Santillan v. Wal-Mart Stores, Inc.*, 203 S.W.3d 502, 508 (Tex. App.—El Paso 2006, pet. denied).

Miller argues that TWC used the wrong policy to determine Bennett's misconduct. Miller argues that TWC used Miller's sexual harassment policy to make its determination, rather than the correct policy—Miller's policy against "misconduct of any nature adversely affecting the company's best interest and reputation." Miller points to TWC's finding that "the claimant was fired for allegedly violating [Miller's] sexual harassment policy." Further, Miller points out that TWC's conclusion was that the "evidence establishes that the claimant merely touched [Coxsey's] shoulder . . . [Bennett] did not violate the employer's policy and therefore was not guilty of misconduct connected with work." But, Miller contends that Bennett was not terminated for violating the sexual harassment policy but for misconduct relating to Miller's best interest and reputation policy.

TWC and Bennett argue that Miller submitted only its sexual harassment policy to TWC when filing its Employer response to Notice of Application. TWC and Bennett also argue that Miller's failure to submit its best interest policy remains unexplained.

Miller responds that it provided TWC with its sexual harassment policy because when Bennett applied for unemployment benefits he told TWC he was fired for sexual harassment. Miller further argues that it provided TWC with its

7

reasoning for firing Bennett, namely, "misconduct of any nature adversely affecting the company's best interest and reputation." Miller adds that it was Bennett who confused TWC into applying the wrong policy when he filled out his application for benefits.

TWC and Bennett counter that regardless of which policy Miller now wants to contend was the basis for Bennett's firing, Miller must produce evidence that conclusively negates all reasonable support for the agency's decision, *on any possible ground* (i.e. regardless of which policy)*,* and Miller has failed to do so. *See Brinkmeyer*, 662 S.W.2d at 956. We agree.

TWC's appeals tribunal specifically found that Bennett "was not guilty of misconduct connected with work." Furthermore, the tribunal found that all Bennett had done was "merely touched [Coxsey's] shoulder." Given these findings, we cannot conclude that Miller has conclusively negated all reasonable support for the agency's decision on any possible ground. With these same facts, TWC could have also found that Bennett was not guilty of a violation of the Miller's best interest and reputation policy. Additionally, not every violation of an employer's policies will trigger denial of unemployment benefits. *See Collingsworth Gen. Hosp.*, 988 S.W.2d at 709. TWC could have also found that the mere touching of Coxsey's shoulder was insufficient to constitute

8

"misconduct" under the labor code.[2]  *See* Tex. Lab. Code Ann. § 201.012(a). Based on the record before us, we hold that the trial court did not err in concluding as a matter of law that reasonable minds could have reached the same conclusion as TWC—that Bennett was not guilty of misconduct connected with work and therefore entitled to benefits.

## V.     Conclusion

Having overruled Miller's three points, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL A:   HOLMAN, GARDNER, and MCCOY, JJ.

DELIVERED: March 27, 2008

---

[2] We do not address whether Miller's parroting of the term "misconduct" in its best interest and reputation policy arises to the labor code's definition of misconduct.  *See* Tex. Lab. Code Ann. § 201.012(a); *see also Collingsworth Gen. Hosp.*, 988 S.W.2d at 709 (holding that not every violation of an employer's policies will trigger denial of unemployment benefits, rather the violation must amount to "misconduct" as defined in the Texas Labor Code).