**E. D. RICHARDSON, Petitioner,**

v.

**The CITY OF PASADENA et al.,
Respondents.**

**No. B–4312.**

Supreme Court of Texas.

July 24, 1974.

Rehearing Denied Sept. 24, 1974.

Foreman, Dyess, Prewett, Rosenberg & Henderson, Charles E. Humphrey, Jr., Keith Short and B. J. Walter, Jr., James C. Calaway, Houston, for petitioner.

Charles A. Easterling, Pasadena, for respondents.

SAM D. JOHNSON, Justice.

E. D. Richardson instituted this suit to set aside an order of the Pasadena Civil Service Commission indefinitely suspending and permanently dismissing him from the Pasadena Police Department. The sole ground for dismissal was insubordination based on Richardson's refusal to submit to a polygraph examination. The trial court upheld the Commission's order and the court of civil appeals affirmed. 500 S.W. 2d 175. We reverse the courts below and set aside the order of the Commission.

Richardson was a classified service employee with the Police Department of the City of Pasadena. Patrolman Richardson received a semiannual performance rating report for the six-month period ending December 31, 1971 which, while satisfactory, was not as high as his previous reports. In addition, that part of the report was left blank which designated the officer by whom the performance rating was made. Richardson discussed the matter with Chief of Police Ellis R. Means who advised him that the rating had been made by the captains and that he would look into it. Chief Means then directed an investigation which resulted in allegations of unsatisfactory (but not criminal) conduct by Richardson.

None of the alleged misconduct, however, with the exception of an allegation of sleeping while on duty, had occurred within the preceding six months [1] as required by statute. The allegations of misconduct, even if true, concerned activity prior to the immediately preceding six-month period prescribed by statute. Chief Means asked Richardson about the allegations of past misconduct and Richardson answered all questions. Thereupon Chief Means either asked or ordered Richardson to submit to a polygraph examination on the grounds that such examination was to determine whether the alleged misconduct had reoccurred within the present or effective six-month period. Richardson declined to do so and Chief Means suspended Richardson indefinitely for insubordination.[2]

Richardson appealed to the Civil Service Commission of the City of Pasadena. At the Commission hearing the City of Pasadena had a number of witnesses subpoenaed and available. Only two witnesses were called and testified, however; these being Chief Means and Richardson. The sharp conflict in their testimony was on whether an order or a request had been made by the Chief to take the polygraph examination. Richardson maintained that the Chief requested him to take the polygraph examination and, hence, he had not disobeyed a direct order. Chief Means, on the other hand, claimed he had given an order. At the conclusion of the testimony of only these two witnesses, both sides rested and the Chairman of the Commission announced that the testimony was closed.

1. Art. 1269m, Sec. 16, Vernon's Ann.Civ. Stat.:

"In any civil service hearing hereunder, the department head is hereby restricted to his original written statement and charges, which shall not be amended, and no act or acts may be complained of by said department head which did not happen or occur within six (6) months immediately preceding the date of suspension by the department head. . . ."

2. Policemen's Civil Service Rules of the City of Pasadena, Texas, Rule 13, Section 6, Subsections (e) and (m):

"(e) That the employee has been guilty of acts which amount to an act of insubordination, or to disgraceful conduct, whether such acts were committed while on duty or off duty.

" . . . .

"(m) That the employee has violated any lawful and reasonable direction made and given by his superior officer, where such violation or failure to obey amounts to an act of insubordination or a breach or proper discipline or resulted or reasonably might be expected to result in loss or injury to the City of Pasadena, or to the public or to the prisoners or wards of the City of Pasadena."

Six days after the hearing was closed, the affidavits of three police officers who were present at the meeting between Chief Means and Richardson were received and read by the Commission. These affidavits corroborated Chief Means' testimony. The three officers who made these affidavits had been subpoenaed to testify before the Commission; two were not called to testify at all however, and the testimony of the third was excluded because the officer had violated the rule.[3] Neither Richardson nor his attorney was notified of the reception, reading and use of the affidavits by the Commission and they therefore were precluded from any opportunity to rebut, object or respond to them. Subsequently the Commission upheld Chief Means.

Richardson brings two contentions to this court. First, he argues that a policeman may not be discharged for insubordination in refusing to submit to a polygraph examination under these circumstances. Second, he argues that the ex parte receipt, reading, and use of the three affidavits without notice to him constitutes a violation of procedural due process. Because we agree with Richardson's second point and think it dispositive, we decline to rule on the first point.

The Firemen's and Policemen's Civil Service Act calls for a Commission decision considering *only* the evidence presented before them in such hearing.[4] The Civil Service Act provides for a subsequent trial de novo in the district court if the civil service employee wishes to appeal the Commission's order. Vernon's Ann.Civ. Stat., Art. 1269m, Sec. 18. In construing Section 18, this court has said:

"Although the statute provides for a trial de novo, this term as applied to reviews of administrative orders has come to have a well-defined significance in the decisions of this state, and as a rule has been taken to mean a trial to determine only the issues of whether the agency's ruling is free of the taint of any illegality and is reasonably supported by substantial evidence." Fire Department of City v. City of Fort Worth, 147 Tex. 505, 217 S.W.2d 664, 666 (1949).

■ Richardson claims a lack of procedural due process by virtue of the acceptance of the three affidavits in question after the close of the hearing. *See* Skates v. City of Paris, 363 S.W.2d 425 (Tex. 1963). The City argues that the opportunity to cross examine the affiants in the district court on appeal cured any due process problem with the Commission's procedure. However, the review afforded an appellant from a Commission order under the trial de novo provision of the Civil Service Act is limited. The agency's order goes to the trial court with a presumption of validity. The party attacking the order must show the court that the order is not supported by substantial evidence. Lewis v. Southmore Savings Association, 480 S. W.2d 180 (Tex.1972). "Where there is substantial evidence which would support either affirmative or negative findings, the order must stand, notwithstanding the Commissioner may have struck a balance with which the court might differ." Gerst v. Goldsbury, 434 S.W.2d 665, 667 (Tex. 1968). Parties before the Commission must be accorded a full and fair hearing on all disputed fact issues. In the instant

---

3. Rule 267, Texas Rules of Civil Procedure.

4. Art. 1269m, Sec. 16a, Vernon's Ann.Civ. Stat.:
"Sec. 16a. It is hereby declared that the purpose of the Firemen and Policemen's Civil Service Law is to secure to the cities affected thereby efficient Police and Fire Departments, composed of capable personnel, free from political influence, and with permanent tenure of employment as public servants. The members of the Civil Service Boards are hereby directed to administer the civil service law in accordance with this purpose; and when sitting as a board of appeals for a suspended or aggrieved employee, they are to conduct such hearing fairly and impartially under the provisions of this law, and are to render a fair and just decision, *considering only the evidence presented before them in such hearing*." [Emphasis added.]

case the testimony of Richardson and Chief Means was directly in conflict on the essential issue of whether Richardson disobeyed an order or merely refused a request. When the hearing ended, the Commission's decision rested on which man the Commissioners believed; there was no other evidence. The subsequently submitted affidavits bore directly on the essential fact issue in the case; yet Richardson had no opportunity to cross examine the affiants, object to the affidavits or offer rebuttal testimony prior to the Commission's resolution of this disputed fact issue.

 The right to cross examination is a vital element in a fair adjudication of disputed facts. The right to cross examine adverse witnesses and to examine and rebut all evidence is not confined to court trials, but applies also to administrative hearings. 1 Davis, Administrative Law Treatise, § 7.02 at 412 (1958); Comm. on Administrative Procedure, Administrative Procedure in Government Agencies, S. Doc.No.8, 77th Cong., 1st Sess. 72 (1941). The Legislature recognized the importance of a full and fair hearing on disputed fact issues when it enacted Article 1269m, Section 16a, V.A.C.S., confining the Commission to the evidence received at the hearing.

It should be noted that we are not limiting the district court to a review of evidence actually before an agency. The parties may introduce additional evidence in the trial court and "the issue is not whether the regulatory agency actually heard and considered sufficient evidence to reasonably support its action, but whether at the time the questioned order was entered there then existed sufficient facts to justify the agency's order." Gerst v. Nixon, 411 S.W.2d 350, 354 (Tex.1966). *And see* Cook Drilling Co. v. Gulf Oil Corporation, 139 Tex. 80, 161 S.W.2d 1035 (1942). Introducing new evidence at the district court trial gives both parties the opportunity to cross examine adverse witnesses and

offer rebuttal evidence before such evidence has a chance to influence the court's decision. It is only when a decision is influenced by evidence of which one party has no knowledge or has no chance to confront and explain that a due process problem arises.

The judgments of the courts below are reversed and the order of the Commission is set aside.