**TEXAS EMPLOYMENT COMMISSION, Appellant,**

v.

**JOHNNIE DODD AUTOMOTIVE ENTERPRISES, INC., Appellee.**

No. 5673.

Court of Civil Appeals of Texas, Waco.

May 5, 1977.

Rehearing Denied June 2, 1977.

Michael E. Stork, Austin, for appellant.

John L. Bates, Waco, for appellee.

HALL, Justice.

The Texas Unemployment Compensation Act (Articles 5221b–1, et seq., Vernon's Tex. Civ.St.) provides for the funding of the State Unemployment Compensation Fund primarily by taxes collected from employers in the State for that purpose; for payment of benefits from the Fund to qualified unemployed persons; for "chargebacks" against former employers' tax accounts and

an increase in their tax rates to replenish the account when benefits are paid to a claimant; and for the administration of the Act by the Texas Employment Commission. Provision is also made in the Act for the filing of claims by the unemployed; notice of the filing to former employers; determination of the validity of the claim; notice of potential chargebacks; and appeals by claimants and former employers to examiners, then to appeal tribunals, then to the Commission, and finally to the courts, under specified timetables.

In the case before us, the tax rate of appellee Johnnie Dodd Automotive Enterprises, Inc., was increased by the Commission as the result of a chargeback based upon payment of unemployment benefits to appellee's former employee, Mrs. Edith M. Harvey. When appellee received notice of the tax increase, it filed a protest with the Commission asserting that Mrs. Harvey was not entitled to benefits, and that it had never received notice of her claim. The Commission affirmed the increase on the theory that it was without jurisdiction to entertain the protest because appellee had failed to appeal an examiner's decision overruling appellee's protest of the potential chargeback upon which the increase is based. At this stage of the controversy, appellee for the first time employed legal counsel and an appeal was taken to the 74th District Court of McLennan County, the county of Mrs. Harvey's residence. After a hearing without a jury, the court set aside the rate increase. The Commission brought this appeal asserting, among other grounds for reversal, that because it had lost jurisdiction the trial court also lacked jurisdiction in the case. Alternatively, the Commission seeks remand of the case to it for hearing on the chargeback contest. We grant the latter relief.

Article 5221b–4(b) provides for the filing of the claimant's initial claim; requires the Commission to mail notice of the filing of claim to the claimant's last employer; calls for "prompt" notice thereafter to the Commission by the employer "of any facts that may adversely affect such claimant's right to benefits, or that may affect a charge to its account"; and then provides that, "If such [last employer] does not mail or deliver such notification to the Commission within ten (10) days from the date notice of a claim was mailed to it by the Commission, such [employer] shall be deemed to have waived all rights in connection with such claim, including any rights it may have under [Article 5221b–5, § (c)(2)]."

In its pertinent parts, Article 5221b–5(c)(2)(B) provides as follows:

To each employer to whom notice of an initial claim has not already been mailed under [Article 5221b–4(b)], and whose account is potentially chargeable with benefits as the result of such initial claim and payment of benefits, a notice of his maximum potential chargebacks shall be mailed when benefits are first paid and an opportunity afforded for protest of his potential chargebacks. . . . If a timely protest is filed, the examiner shall promptly decide the issues involved in such protest and shall mail a notice of his decision thereon to the protesting employer. Such decision shall become final twelve (12) days from the date of mailing thereof, unless such employer mails to the Commission at Austin, Texas, a written appeal therefrom within such twelve (12) days. Administrative review hereunder shall be in accordance with Commission rules or regulations, and appeals to the Courts shall be permitted only after such employer has exhausted his administrative remedies (not including a motion for rehearing) before the Commission . . ..

The facts material to our disposition of this appeal are without dispute. Mrs. Harvey voluntarily quit her job with appellee and then applied for unemployment benefits. The Commission's records reflect that a copy of Mrs. Harvey's claim for benefits was mailed to appellee. It has been appellee's contention throughout the controversy, and it was so on the trial, (1) that Mrs. Harvey quit her job without good cause connected with her work, (2) that appellee did not receive the copy of Mrs. Harvey's

claim and (3) that the claim was never mailed to appellee by the Commission. Findings on these questions in favor of appellee are implicit in the judgment, and they are amply supported by evidence we need not detail. Of course, without knowledge of Mrs. Harvey's claim, appellee did not contest it. However, appellee did receive "Notice of Maximum Potential Chargeback" mailed to it by the Commission on December 27, 1974. Appellee's president filed a timely protest of the chargeback on behalf of appellee (on January 6, 1975), stating, "I did not fire this employee. She told me she had to quit to take care of her husband." Ten days later, on January 16, 1975, the Commission responded to the protest by mailing appellee notice of an examiner's decision that "Benefits Are Chargeable." In addition to the names of the parties, identification of the claim, the amount of benefits chargeable to appellee's account, and "date mailed," the notice of decision contained the following information:

Explanation Of Notice Of Decision Of Potential Chargeback

A decision that "Benefits *Are Chargeable*" means the amount of benefits (not to exceed the amount shown as Benefits Chargeable) paid this claimant following the initial claim date will be used in computing your experience tax rate because it has been determined that the claimant's last separation from your employment prior to the initial claim date shown above was not a separation as described in statement 1, 2, or 3 below.

1. A separation required by a Federal or Texas statute or Texas municipal ordinance; or

2. A voluntary quit without good cause connected with the work; or

3. A discharge for misconduct connected with the work.

. . . . .

Section 7(c)(2)(B) of the Texas Unemployment Compensation Act provides that this decision shall become final twelve (12) days from the date it is mailed to you unless you mail to the Commission at Austin, Texas, a written appeal therefrom within such twelve (12) days. If you appeal, please mail it to the Texas Employment Commission, Appeal Tribunal, TEC Building, Austin, Texas 78778.

Explanation of why "Benefits Are Chargeable"

. . . . .

Your protest to the Notice of Maximum Potential Chargeback . . . was timely filed. However, notice of this individual's claim was sent to you when the initial claim was filed. You either did not file a timely protest to the claim, or you have been notified previously that your account was chargeable with benefits paid the claimant. Therefore, unless you have an appeal pending regarding this individual's initial claim, you have no further right to protest this notice of chargeback except with respect to any clerical or machine error as to the amounts [shown on the decision]. If you have such an appeal pending, the appeal decision will rule on this potential chargeback.

The record shows without dispute that appellee received a copy of this decision in time to perfect a timely appeal from it to the Commission. However, appellee did not appeal the decision, and it became final on January 28, 1975.

Later, in January, 1976, when appellee was notified by the Commission that its tax rate had been increased due to the chargeback of benefits paid to Mrs. Harvey, appellee sought a rehearing on the whole controversy, including Mrs. Harvey's right to benefits, asserting that it never received notice of her claim, and that its first notice of her claim was the notice of potential chargeback mailed in December, 1974, which it protested. The Commission ruled that because appellee failed to appeal the examiner's notice of decision of potential chargeback (in January, 1975) it had become final, and that the Commission did not have jurisdiction to review the tax rate increase on the grounds assigned by appellee. As we

have said, appellee then employed legal counsel for the first time in this controversy, and an appeal was taken to the district court.

Clerical or machine errors as to the amount of the chargeback are not asserted.

■ Under the provisions of Article 5221b–5(c)(2)(B), notices of maximum potential chargebacks are to be mailed to employers "to whom notice of an initial claim has not already been mailed"; and "an opportunity [shall be] afforded for protest of his potential chargebacks" on its merits by an employer who timely mails his protest with a statement of facts upon which the protest is based to the Commission, as appellee did. Accordingly, under the record, the examiner erred in summarily deciding appellee's protest of the notice of maximum potential chargeback, without consideration of its merits, on the basis that appellee was mailed a copy of Mrs. Harvey's claim but did not protest it.

As shown above, in its "Notice Of Decision Of Potential Chargeback" the Commission first told appellee that it could appeal the decision, and then told appellee "unless you have an appeal pending regarding this individual's initial claim" (which appellee did not have because of lack of notice of the claim) "you have no further right to protest this notice of chargeback." Later, because appellee did not appeal the erroneous decision, the Commission ruled it was final, and thereby terminated the controversy without ever according appellee a hearing on the merits of its contentions. Although the Commission was technically correct in this ruling, the record supports an implied finding that appellee did not appeal the examiner's decision because of the statement in the Commission's Notice that it had no further rights in the matter.

It was not unusual that appellee was not represented by a lawyer before the Commission. It is well known that hearings before administrative agencies are generally informal. *Cook Drilling Co. v. Gulf Oil Corporation,* 139 Tex. 80, 161 S.W.2d 1035, 1036 (1942). Consequently, in many cases parties may, and properly do, avail themselves of the action of such agencies without the assistance of attorneys at law. See, *Booth v. Texas Employers' Ins. Ass'n,* 132 Tex. 237, 123 S.W.2d 322, 326 (1938). This is reason enough to commend an agency for attempting to advise a party of his rights, but it is also reason enough for the agency to scrupulously avoid instructing him in terms which might in a particular case (as here) misinform and thereby defeat, rather than affirm, those rights.

■ Constitutional due process requires an administrative agency to accord a full and fair hearing on all disputed fact issues critical to the rights of the parties on a question before it. Article 6252–13a, § 13(a), Vernon's Tex.Civ.St.; *Richardson v. City of Pasadena,* 513 S.W.2d 1, 3 (Tex.Sup., 1974); *Trimble v. Texas State Board of Registration For Professional Engineers,* 387 S.W.2d 876 (Tex.Sup., 1965). The Commission has not yet given appellee a hearing on the merits of its contest of the chargeback which resulted in the tax rate increase. The Commission would charge this failure to appellee, but as we have shown it resulted from the Commission's mistaken belief that appellee had been mailed a notice of Mrs. Harvey's claim for benefits; and from misinformation the Commission furnished appellee regarding its rights (and lack of rights) based upon the mistaken belief as to the claim notice. This case should have been returned to the Commission for the hearing.

The judgment is set aside. The tax rate increase is set aside. This cause is remanded to the Commission for a hearing on the merits of appellee's protest of the potential chargeback.