CITY OF LAREDO, Firemen's and Policemen's Civil Service Commission of the City of Laredo and Victor L. Garcia, Chief of Police, Appellants,

v.

Jose L. MARTINEZ, Appellee.

No. 04–83–00292–CV.

Court of Appeals of Texas, San Antonio.

Nov. 30, 1984.

Rehearing Denied Jan. 8, 1985.

Anthony C. McGettrick, City Atty.'s Office, Laredo, for appellants.

George O. Jacobs, Charles R. Borchers, Person, Whitworth, Ramos, Borchers & Morales, Laredo, for appellee.

Before BUTTS, REEVES and TIJERINA, JJ.

## OPINION

REEVES, Justice.

Police Lieutenant Jose L. Martinez was suspended for five days by the police chief of the City of Laredo. He appealed to the Civil Service Commission of Laredo which reduced the suspension to four days. Martinez then appealed to the district court which set aside the decisions of the Civil Service Commission and the police chief. The City of Laredo, the Firemen's and Policemen's Civil Service Commission of the City of Laredo, and the Laredo Police Chief appeal from the judgment of the district court.

One point of error is asserted: the trial court erred in reversing the decision of the Civil Service Commission since the Commission's decision to suspend Martinez for four days was supported by substantial evidence.

There is a presumption in favor of the validity of the administrative agency's action. The burden is on the person challenging such action to show that it is not supported by substantial evidence. *Board of Adjustment of the City of San Antonio v. Leon*, 621 S.W.2d 431, 434 (Tex.Civ.App. —San Antonio 1981, no writ). Under the substantial evidence rule, the decision of an administrative agency must stand unless the record as a whole compels the conclusion that reasonable minds could not have reached the conclusion reached by the agency. *Id.* at 433.

The incident for which Lieutenant Martinez was suspended occurred on September 3, 1982. Lieutenant Hinojosa, Captain Moran and Officer Revolledo of the Laredo Police were discussing in a hallway of the police station which patrol car was to be assigned to Officer Revolledo. Officer Revolledo did not want to use unit number 14 which had been assigned to him because it had been stripped of lights, radios and sirens. Lieutenant Martinez arrived at the scene and an argument between him and Lt. Hinojosa ensued. What was said during the argument is disputed.

Lt. Hinojosa testified that Lt. Martinez told Officer Revolledo, who was under Lt. Hinojosa's command, to not take a car and to just go tell Judge Molina (a judge who issued warrants). Captain Moran testified that Lt. Martinez shouted this to the group as he approached. Then, according to Lt. Hinojosa, Martinez asked him, "Why don't you drive Unit 14?," to which Hinojosa responded, "Why don't you?." Captain Moran testified that at this point Lt. Hinojosa told Martinez that he, Hinojosa, was fed up with Martinez's meddling in their decisions. On cross examination, Hinojosa admitted that Martinez, as a member of the management team for the police department, had the right to discuss the problems regarding patrol unit number 14 with all officers, even if they were under the command of Captain Moran.

Martinez then allegedly told Hinojosa that no one was going to tell him what to do and stuck his tongue out at Hinojosa. Captain Moran testified that he did not see Martinez do this but had, on other occasions, when Martinez was trying to "put somebody down." Lt. Martinez testified that he had a habit of sticking his tongue out but not in a derogatory manner, and, further, he had not stuck out his tongue to Lt. Hinojosa on this occasion. Rather, Lt. Martinez claimed, it was Hinojosa who stuck out his tongue and did so in full view of Captain Moran without any disciplinary action on Moran's part. Captain Moran denied seeing Hinojosa act in this manner.

Hinojosa testified that Martinez said, in Spanish, the English equivalent of "if you want something with me, let's see how you come out of it." At this point, Hinojosa turned away to respond to a request to come to the police chief's office. As Hinojosa walked away, Martinez said, in Spanish, the English equivalent of "you are good for nothing together with your Captain." However, Martinez's translation of the Spanish phrase he used is "it's not worth it."

Captain Moran testified that he then asked Martinez, "Are you referring to me? ... are you going to challenge me, too?" Martinez responded, testified Moran, "No, you don't have the guts to discipline your people." When Moran suggested they talk

to the Chief, Martinez answered, "You go ahead and talk to the Chief, ... I am still telling you to discipline your people." Moran testified he then said, "Look, you are not going to give me orders, now or ever," to which Martinez responded, "I'm giving the orders now and anytime I please." Martinez denied making this statement.

A secretary who was sitting in an office near the hallway on September 3, 1982, testified that she heard loud voices and recognized Lt. Martinez and Captain Moran's voices. The only part of the conversation she heard distinctly was Martinez stating, "I am giving you an order," and Moran responding, "You don't give me any orders."

After the incident, Captain Moran submitted a letter of complaint to the police chief concerning Martinez's behavior. On cross examination, Captain Moran testified that the letter included matters extraneous to the September 3, 1982 incident. On October 18, 1982, the police chief issued a letter suspending Martinez for five days for two violations of the Rules of the Firemen's and Policemen's Civil Service Commission of the City of Laredo: discourtesy to the public and/or conduct unbecoming an officer. The only basis given for these violations is Martinez's actions on September 3, 1982.

Martinez appealed to the civil service commission. A hearing was held and an order issued on November 15, 1982. The order stated there were no relevant grounds on which to uphold the five day suspension because of discourtesy to the public. The commission found, however, that Martinez did engage in conduct unbecoming an officer. The order reduced his suspension to four days.

When reviewing an order of the civil service commission, a trial court may not substitute its judgment for that of the commission. *City of Garland v. Dittrich*, 517 S.W.2d 839, 841 (Tex.Civ.App.—Eastland 1974, no writ). A review of the testimony reveals contradictory versions of what was said, what was meant by the statements, and what gestures were made during the September 3, 1982 incident.

Yet, reasonable minds might well have concluded, based on the testimony of Lt. Hinojosa, Captain Moran and the secretary at the police station, that Martinez did make disrespectful remarks and gestures to a fellow officer and an officer of superior rank. Further, it is improper for a trial court, in reviewing a civil service commission order to assume the function of fact finder. *City of Wichita Falls v. Fowler*, 555 S.W.2d 920, 923 (Tex.Civ.App.—Fort Worth 1977, no writ). The trial court's query is not whether Lt. Martinez did or did not say certain words or engage in the conduct stated as grounds for his suspension. Rather, the question before the trial court is whether the commission's order is supported by substantial evidence, and this is a question of law. *Pruitt v. City of Houston*, 548 S.W.2d 90, 95 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ). Any conflict in the evidence must be resolved in favor of the commission. *City of Carrollton v. Keeling*, 560 S.W.2d 488, 490 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.).

Therefore, we hold there was substantial evidence to support the commission's order.

However, it is possible the trial court set aside the order for a different reason. There were two issues properly before the trial court: (1) whether the commission's order was reasonably supported by substantial evidence, and (2) whether the order was free from taint of any illegality. *Fire Department of City of Fort Worth v. City of Fort Worth*, 147 Tex. 505, 217 S.W.2d 664, 666 (1949).

Martinez alleged a violation of his due process rights by the Commission. The letter of complaint submitted by Captain Moran to the police chief was not limited to events transpiring at the September 3, 1982 incident. Although the police chief's suspension order restricted the grounds for suspension to conduct occurring only on September 3, 1982, there is testimony in the record that the Commission did read Captain Moran's letter. Martinez contends that he never had notice of other charges alleged by Captain Moran nor did he have an opportunity to respond to such charges. He argues this was a violation of his due

process rights because the commission considered the contents of the letter in its deliberations.

■ When a decision is influenced by evidence of which one party has no knowledge, or has no chance to confront a witness or explain, a due process violation problem arises. *Richardson v. City of Pasadena,* 513 S.W.2d 1, 4 (Tex.1974).

■ Originally, Lt. Martinez testified that the attorney for the City of Laredo attempted to introduce Captain Moran's letter into evidence, the Commission members adjourned to a private room to consider the contents of the letter, and, upon returning, ruled the letter would not be admitted into evidence. On cross examination, Lt. Martinez recalled that the reason the Commission saw the letter was that his counsel asked to see the letter and the city attorney objected on the basis of the attorney-client privilege and the work-product privilege. Martinez further recalled that the Commission ruled his counsel could not read the letter.

The parties are in agreement that the Commission did read the contents of Captain Moran's letter. The letter, however, was not allowed into evidence. The commissioner who testified stated that he had no recollection of the letter or its contents. He stated that the decision of the commission was based only on the testimony of the witnesses at the hearing and on the police chief's letter of suspension. The commissioner had with him at trial in district court the file containing all documentary evidence from Lt. Martinez's hearing. The letter of complaint written by Captain Moran was not included.

Under these facts, no due process violation occurred.

We reverse the judgment of the trial court, and render judgment that the order of the Laredo Firemen's and Policemen's Civil Service Commission be sustained.

TIJERINA, Justice, dissenting.

I respectfully dissent. Appellee's suspension arises from a trivial act of misconduct which at most should merit a reprimand. This set of facts should be viewed under the doctrine of *de minimis non curat lex,* which stands for the proposition that the law does not care for or take notice of very small or trifling matters. This doctrine has been used to excuse minor deviations from the letter of the law. *See Fort Worth Neuropsychiatric Hospital, Inc. v. Bee Jay Corp.,* 587 S.W.2d 746, 757 (Tex.Civ.App.—Fort Worth 1979), *rev'd on other grounds,* 600 S.W.2d 763 (Tex. 1980); *Anguiano v. Jim Walter Homes, Inc.,* 561 S.W.2d 249, 255 (Tex.Civ.App.— San Antonio 1978, writ ref'd n.r.e.).

Additionally, the commission's hearing on this matter was tainted when members of the commission adjourned to a private room to consider the contents of a letter from Captain Moran. Appellee was not allowed to read the letter, which deprived him of effective cross examination and due process. The fact that the letter was not admitted in evidence does not cure the inappropriate action by the commission. The right to cross examination is a vital element in a fair adjudication of disputed facts. The right to examine and rebut all evidence is not confined to court trials, but applies also to administrative hearings. *Richardson v. City of Pasadena,* 513 S.W.2d 1, 4 (Tex.1974). Accordingly, I would affirm.