# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00148-CV

**TXU Generation Company, L.P.; TXU Portfolio Management Company, L.P.; Oncor Electric Delivery Company; Coalition of Wholesale Electric Market Participants; Occidental Chemical Corporation; Occidental Permian, Ltd.; Occidental Power Marketing, L.P.; Occidental Power Services, Inc.; Oxy Vinyls, L.P.; Ingleside Cogeneration, L.P.; and Coral Power, L.L.C., Appellants**

**v.**

**Public Utility Commission of Texas, Appellee**

## DIRECT APPEAL FROM THE PUBLIC UTILITY COMMISSION OF TEXAS

## D I S S E N T I N G   O P I N I O N

Because I believe that the Public Utility Commission's rule, 29 Tex. Reg. 1899 (2004) (to be codified at 16 Tex. Admin. Code § 25.503 (Pub. Util. Comm'n)) (Wholesale Market Oversight Rule (WMO Rule)), exceeds the Commission's statutory authority, I respectfully dissent.

The defects in rule 25.503 begin with the absence of an intent requirement—participants in the deregulated wholesale electricity market are at peril of presumed liability based solely on the *effects* of their competitive conduct, even if inadvertent. 16 Tex. Admin. Code § 25.503(g). The core concepts found in rule 25.503 are derived from section 39.157 of

PURA. *See* 29 Tex. Reg. 1905. Section 39.157 requires the Commission to "monitor market power" and maintain oversight over "market power abuses," defined as "practices by persons possessing market power that are unreasonably discriminatory or tend to unreasonably restrict, impair, or reduce the level of competition, including practices that tie unregulated products or services to regulated products or services or unreasonably discriminate in the provision of regulated services," and "include predatory pricing, withholding of production, precluding entry, and collusion." Tex. Util. Code Ann. § 39.157(a) (West Supp. 2004-05). These are familiar antitrust concepts. *See*, *e.g.*, *Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko*, 124 S. Ct. 872, 878-79 (2004); *see also* Tex. Util. Code Ann. § 39.157(a) (clarifying that subsection did not affect enforcement of state or federal antitrust laws). The code construction act thus compels us to look to antitrust law when construing section 39.157. Tex. Govt. Code Ann. § 311.011(b) (West 2005) ("[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.").[1]

As the majority concedes, section 39.157 implies an intent requirement for proving "market power abuse" under that provision because it employs antitrust concepts that carry with them the implication of an intent element. Slip op. at 14 ("If the authority for this rule was derived only from section 39.157(a) governing 'market power abuse,' we would agree that an element of intent is implied."). In adopting a rule that implements the requirements of section 39.157 yet omits the intent requirement implicit in its terms, the Commission exceeds its statutory authority. *See State*

---

[1] I thus disagree with the majority's dismissal of state and federal antitrust authorities as merely "persuasive." Slip op. at 14 & n.6.

*v. Public Util. Comm'n*, 131 S.W.3d 314, 321 (Tex. App.—Austin 2004, pet. denied) (court to consider whether rule: (1) contravenes specific statutory language; (2) runs counter to general objectives of statute; or (3) imposes additional burdens, conditions, or restrictions in excess of or inconsistent with relevant statutory provisions).

By departing from the requirements of section 39.157, rule 25.503 distorts the legislature's careful balancing of the dual policy goals reflected in the statute, encouraging the innovation and risk-taking of competition while protecting the integrity of market mechanisms. *See Law Offices of Curtis V. Trinko*, 124 S. Ct. at 878-79. Indeed, both chapter 39 of PURA as a whole and the Texas Free Enterprise and Antitrust Act seek to balance such interests. *Compare* Tex. Util. Code Ann. § 39.001(a) (West Supp. 2004-05), *with* Tex. Bus. & Com. Code Ann. § 15.04 (West 2002); *see also* Tex. Gov't Code Ann. § 311.023(4) (West 2005) (courts may consider "common law or former statutory provisions, including laws on the same or similar subjects"). The term "market power abuse" in section 39.157, like similar standards employed in the antitrust context, carries with it an unmistakable legislative intent to proscribe a type of conduct only where intent can be proven. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1975); *see also United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966). Absent an intent requirement, "market power abuse" is rather unclear.[2]

---

[2] The WMO Rule does not define "market power abuse" other than to explain that the term includes "[w]itholding of production, whether economic withholding or physical withholding, by a market participant who has market power, constitutes an abuse of market power." *See* 16 Tex. Admin. Code Ann. § 25.503(g)(7). Given the nature of the wholesale electricity market, it is unclear whether or how market participants could ascertain whether they possess "market power" at a given moment amid the myriad, fluid circumstances on the grid, much less conform their conduct to avoid the prohibited effects. Nor is it clear whether or how market participants could ascertain how to avoid committing such other violations as creating "artificial congestion." *See id*. § 25.503(g)(1).

3

The market participants go as far as to urge that the term is unconstitutionally vague, and they are not far off the mark, though we need not reach that issue. The majority, in fact, concedes that "[t]he lack of a well defined concept of market power does produce some uncertainty in the enforcement of the rule," slip. op. at 32, but dismisses its significance.

In the antitrust context, the Texas Supreme Court has cautioned that "a vague standard [of predatory pricing] has a chilling effect on business. Business must be able to determine prospectively what price it may legally charge." *Caller-Times Pub. Co. v. Triad Comm., Inc.*, 826 S.W.2d 576, 581 (Tex. 1992). Accordingly, the court rejected a subjective intent standard because "a seller cannot predict where it may legally set a price" and "this standard creates a lack of predictability in the law which punishes those who would engage in vigorous competition." *Id*. Rule 25.503's "market power abuse" standard suffers similar defects: a market participant cannot predict what competitive conduct on its part could give rise to effects that the Commission deems "abuse" or "withholding." In addition, the enumerated list of prohibited activities is not even exclusive. *See* 16 Tex. Admin. Code § 25.503(g) (term "prohibited activity" includes, but is not limited to, enumerated "acts and practices"). Without the balancing factor of an intent requirement, these features of rule 25.503 chill competition in a manner inconsistent with the legislature's intent.[3]

---

[3] In response to my discussion of *Caller-Times* and federal antitrust cases, the majority inaccurately portrays my arguments and attempts to pigeonhole them as relating to constitutional vagueness issues rather than statutory construction. Slip op. at 29-30. As is apparent above, my arguments concern the proper construction of section 39.157, and respecting the legislature's balancing of interests reflected therein. Having determined that rule 25.93 exceeds the Commission's statutory power, I would not reach the constitutional issues.

4

Further compounding the problem is the burden of proof: market participants are presumed to have violated rule 25.503 if the effect of their competitive activities, even inadvertently, is whatever may constitute "market power abuse." *See id.* Subsection (h) excludes from "prohibited activity" conduct by market participants that "served a legitimate business purpose consistent with prices set by competitive market forces; and that it did not know, and could not reasonably anticipate, that its actions would inflate prices, adversely affect . . . reliability [or] proper accounting." However, this affirmative "defense" applies *only* "if the market entity establishes" it. *Id.* § 25.503(h). The significance of the placement of the burden of proof cannot be underestimated, especially in an administrative proceeding subject only to substantial-evidence review. *See Richardson v. City of Pasadena*, 513 S.W.2d 1, 3 (Tex. 1974).[4]

The legislature's philosophical foundation underlying chapter 39 was that "the production and sale of electricity is not a monopoly warranting regulation of rates, operations, and services and that the public interest in competitive electric markets requires that, except for transmission and distribution services and for the recovery of stranded costs, electric services and their prices should be determined by customer choices and the normal forces of competition." Tex. Util. Code Ann § 39.001(a). To this end, the legislature mandated that regulatory authorities "shall

---

[4] In such an environment, it is perhaps not surprising that several of the market participants equate rule 25.503 with back-door price regulation. They contend that uncertainty regarding the nature of competitive conduct that is proscribed, the prospect of sanctions based not on intent but mere effect, and a "guilty until proven innocent" burden of proof has compelled them to cling to any guidance they could discern from the rule, such as the Commission's reference to marginal cost pricing in the preamble to the rule. *See* 29 Tex. Reg. 1899, 1916 (2004) (to be codified at 16 Tex. Admin. Code § 25.503 (Pub. Util. Comm'n)) ("Pricing in excess of marginal cost by a seller who is immune from the chastening hand of competition is an abuse of market power.").

authorize or order competitive rather than regulatory methods to achieve the goals of the chapter to the greatest extent feasible and shall adopt rules and orders that are practical and limited so as to impose the least impact on competition." *Id*. § 39.001(d). In my view, the Commission, in rule 25.503, has strayed from these principles, as well as from the language and intent of section 39.157 in particular. *See Railroad Comm'n v. Lone Star Gas Co.*, 844 S.W.2d 679, 685 (Tex.1992) (quoting *Gerst v. Oak Cliff Savings & Loan Ass'n*, 432 S.W.2d 702, 706 (Tex. 1968)) ("The determining factor. . . whether. . . a particular administrative agency has exceeded its rule-making powers is that the rule's provisions must be in harmony with the general objectives of the Act involved.").

Having conceded that the section 39.157's "market power abuse" concept contains an implied intent element, the majority posits two alternative statutory bases to support a rule that implements section 39.157's conduct standards yet omits its implied intent element. First, the majority looks to PURA section 39.101, which requires the Commission to "ensure that retail consumer protections are established that entitle a consumer . . . to safe, reliable, and reasonably priced electricity." Tex. Util. Code Ann. § 39.101. Second, the majority relies on section 35.004(e), which requires the Commission to "ensure that ancillary services necessary to facilitate the transmission of electric energy are available at reasonable prices." *Id*. § 35.004(e).

Based on their plain language, both provisions are limited in scope. Section 35.004(e) speaks only to ancillary services, which the parties represent is a small component of the wholesale electricity market. Section 39.101 does not speak to the wholesale market at all but only to the *retail* electricity market. Within these limited provisions, the majority nonetheless finds broad-ranging regulatory power. Slip op. at 15-17.

Regarding section 39.101, the majority acknowledges that the provision is addressed solely to the retail market but extrapolates that because "both the retail and wholesale electric markets should be governed by market forces" and "issues relating to reliability or price in the wholesale market will necessarily be reflected in the retail market," the Commission's power to ensure retail customers "safe, reliable, and reasonably priced electricity" for retail consumers would necessarily permit it to act in the wholesale market. Slip op. at 15-16. Similarly, the majority suggests that because "[i]n the existing competitive wholesale market, scarcity of electric power will be reflected in higher prices throughout the market," its authority under section 35.004(e) to ensure that ancillary services are available at reasonable prices would permit it broad power to regulate conduct throughout the entire wholesale market. Slip op. at 16. As a matter of statutory construction, I disagree that section 39.101 and section 35.004(e) grant the Commission such broad-ranging regulatory power in the wholesale market. *See Reliant Energy v. Public Util. Comm'n*, 101 S.W.3d at 145 (overbroad Commission rule invalid).

Moreover, even if section 39.101 and 35.004(e) would otherwise confer general power on the Commission to act *in some manner* with regard to wholesale transactions, such an authorization is not limitless—rather, the Commission must act in conformity with the broader statutory objectives and framework of the electricity deregulation statutes. Were it otherwise, the Commission's general duties to ensure "safe, reliable, and reasonably priced electricity" in the retail market, as contemplated in section 39.101, and that ancillary services are available at "reasonable prices," per section 35.004(e), could be invoked to justify virtually any manner of regulation (including that of prices) if, in the Commission's judgment, such actions would ensure "reliability"

7

and "reasonable prices." The limitation that prevents such measures lies not within the terms of sections 39.101 or 35.004(e) but in the overall structure and general objectives of electricity deregulation legislation[5] and the legislature's explicit mandate that "[r]egulatory authorities . . . shall authorize or order competitive rather than regulatory methods to achieve the goals of the chapter to the greatest extent feasible and shall adopt rules and orders that are practical and limited so as to impose the least impact on competition." Tex. Util. Code Ann. §§ 39.001(a), (c); *see State v. Public Util. Comm'n*, 131 S.W.3d at 321 (rule invalid if it contravenes specific statutory language or runs counter to general objectives of statute); *see also Railroad Comm'n v. Lone Star Gas Co.*, 844 S.W.2d 679, 685 (Tex. 1992) (determining factor whether particular administrative agency has exceeded its rule-making powers is "that the rule's provisions must be in harmony with the general objectives of the Act involved."). The majority overlooks the context of sections 39.101 and 35.004(e) within the statutory framework.

Beyond the majority's reliance on sections 39.101 and 35.004(e), it continually returns to the notion that Commission members and staff are experts to whose decisions we should defer. It couples this deference with policy observations to the effect that "electricity is different." I concede that the Commission has expertise regarding the behavior of the Texas electricity market and that the legislature intended it to have some flexibility in effectuating its statutory duties. However, even if the legislature intends that an agency created to centralize expertise in a certain regulatory area "be given a large degree of latitude in the methods it uses to accomplish its regulatory

---

[5] The legislature enacted section 35.004(e) as part of the 1999 electricity deregulation bill. *See* Act of May 27, 1999, 76th Leg., R.S., ch. 405, §§ 17, 39, 1999 Tex. Gen. Laws 2543, 2552, 2558-2602.

function," *Texas Mun. Power Agency v. Public Util. Comm'n*, 150 S.W.3d 579, 586 (Tex. App.—Austin 2004, pet. filed), an agency may not, in the guise of implied powers, exercise what is effectively a new power on the theory that such exercise is expedient for the agency's purpose, *Public Util. Comm'n v. GTE-Southwest, Inc.*, 901 S.W.2d 401, 407 (Tex. 1995), nor may it contravene specific statutory language, run counter to the general objectives of the statute, or impose additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions. *State v. Public Util. Comm'n*, 131 S.W.3d at 321.

I also recognize the unique nature of electricity as a commodity, which can create some conceptual challenges when applying antitrust or other economic concepts. However, nothing about the nature of electricity suggests that we should construe Commission statutory power more broadly than the terms of those enactments would otherwise provide. The legislature was aware of the unique nature of electricity when it deregulated the industry, enacted its competition mandates in chapter 39, and employed antitrust concepts in the standards it chose to govern the wholesale marketplace. Those standards should govern our analysis of the Commission's power here and, in my view, compel us to invalidate rule 25.93.

Finally, by reaching such a conclusion, I do not, as the majority accuses, "ignore" legislative intent to protect consumer welfare in a deregulated electricity market, much less suggest that consumer protection is not a statutory goal. To the contrary, our duty is to faithfully follow the legislature's intent to advance consumer welfare, but we should not lose sight of the legislature's overarching policy judgment that consumer welfare is ordinarily best advanced by vigorously competitive retail and wholesale electricity markets rather than by regulation. *See* Tex. Util. Code

Ann. § 39.001(a) & (d).  And, where, as in section 39.157, the legislature has carefully and precisely balanced competing considerations in its pursuit of consumer welfare—preventing market abuses without causing what it views as too great a chilling effect on competition—we should be faithful to its judgment and ensure that the Commission's rules are in conformity.

For these reasons, I respectfully dissent.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Filed:   May 19, 2005

10