

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00131-CV

_____

CITY OF FORT WORTH, Appellant

V.

SHEA O'NEILL, Appellee

On Appeal from the 342nd District Court
Tarrant County, Texas
Trial Court No. 342-292450-17

Before Gabriel and Kerr, JJ.; and Michael Massengale (Former Justice, Sitting by
Assignment)
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

The Fort Worth Fire Department indefinitely suspended firefighter Shea O'Neill from his job with the department. O'Neill appealed that decision to a hearing examiner, who reversed the suspension and reinstated him as a firefighter. The City of Fort Worth appealed the hearing examiner's decision to the district court, which granted O'Neill's plea to the jurisdiction and dismissed the case for lack of subject-matter jurisdiction. The City has now appealed to us, contending in a single issue that the district court had jurisdiction under the Civil Service Act and thus erred by granting O'Neill's jurisdictional plea. We will affirm in part and reverse and remand in part.

## Background

In April 2015, O'Neill attended a football scrimmage at Texas Christian University with his seven-year-old twin sons and their eight-year-old friend. At the time, O'Neill was in his early 40s and on occupational leave from the fire department because of a work-related injury to his left shoulder.

James Woods, a retiree in his late 70s, and his wife were also at the scrimmage. The Woodses claimed that the children were blocking their view of the game; eventually, Woods stood up, approached the boys, and shouted and cursed at them. O'Neill stepped in and confronted Woods. O'Neill then struck Woods with his left hand, and Woods fell to his knees. Woods sustained facial injuries, several cracked and broken teeth, and a bloody nose.

After learning about and investigating the incident, the fire chief found that O'Neill had violated several fire-department rules and regulations and indefinitely suspended him (that is, terminated his employment) in July 2015.[1] Among other findings, the chief found by a preponderance of the evidence that O'Neill "sucker punched" Woods while Woods was seated; O'Neill's hitting Woods was unjustified; O'Neill hit Woods hard enough to bloody his nose and "chip and crack" his teeth; the strike left Woods with a swollen face, headaches, memory loss, and medical and dental costs; and O'Neill was untruthful during the investigation in claiming that he struck Woods to defend the children.

O'Neill appealed the fire chief's indefinite-suspension decision to a hearing examiner, who held a two-day evidentiary hearing in December 2016. In May 2017, she issued a 45-page decision in which she found that the evidence did not "support findings or conclusions that it was more probable than not that [O'Neill] received due process in the [Fort Worth Fire Department] Professional Standards investigation or that he was untruthful in his statements to Professional Standards." She further found that the evidence did not support the fire chief's conclusions that O'Neill was untruthful in claiming that "the physical contact was in the defense of his children"; that O'Neill struck Woods after Woods sat down and looked away; and that the

---

[1]O'Neill was also arrested and charged with injury to the elderly, a felony offense. *See* Tex. Penal Code Ann. § 22.04. The case was tried in June 2016, ending with a hung jury.

"slap" was of sufficient force to knock Woods to his knees or cause Woods's injuries. Based on her findings, the hearing examiner granted O'Neill's appeal and reinstated him with back pay and benefits.

The City appealed the hearing examiner's decision to district court, alleging that the district court had jurisdiction to consider the appeal for two reasons: (1) the hearing examiner's decision was procured by unlawful means because she considered evidence not admitted at the hearing and (2) the hearing examiner exceeded her jurisdiction because she concluded that the fire department's due-process violations compelled her to reinstate O'Neill. *See* Tex. Loc. Gov't Code Ann. § 143.057(j). O'Neill filed a plea to the jurisdiction arguing that the trial court lacked subject-matter jurisdiction. The district court granted the plea and dismissed the City's claims.

**Appeals under the Civil Service Act**

Chapter 143 of the Texas Local Government Code—commonly referred to as the Civil Service Act—governs the civil-service employment of firefighters and police officers in those Texas municipalities (like Fort Worth) that have adopted the Act. *See generally id.* §§ 143.001–.403. In a civil-service disciplinary case yielding (among other things) an indefinite suspension, a firefighter may appeal either to the municipality's commission or to an independent hearing examiner. *See id.* §§ 143.010 (outlining commission-appeal procedure), 143.053 (discussing disciplinary-suspension appeals to commission), 143.057(a) (permitting appeal to an independent hearing examiner

4

instead of to commission). Here, O'Neill chose the hearing-examiner route.[2] Hearing examiners have the same duties and powers as the commission, *id.* § 143.057(f), which include conducting the hearing fairly and impartially, rendering a just and fair decision, and considering only the evidence submitted at the hearing. *Id.* § 143.010(g); *see also Smith*, 292 S.W.3d at 20 ("[Section 143.010(g)] both confers and limits the power of a commission and a hearing examiner. It mandates that a decision be made on evidence submitted at the hearing."); *see also* Tex. Loc. Gov't Code Ann. § 143.053(d) (prohibiting commission from considering evidence that was not presented at the hearing).

The Civil Service Act permits a hearing examiner to (1) permanently dismiss a suspended firefighter or police officer from the department; (2) temporarily suspend an already-suspended firefighter or police officer from the department; or (3) restore a suspended firefighter or police officer to his "former position or status in the department's classified service" with back pay and benefits for the period during which he was suspended. Tex. Loc. Gov't Code Ann. § 143.053(e), (f); *see id.* § 143.057(f). A hearing examiner can suspend or dismiss a firefighter or police officer "only for violation of civil service rules" and only after finding "the truth of the specific charges against [him]." *Id.* § 143.053(g); *see id.* § 143.057(f).

---

[2]An independent hearing examiner is "often perceived to present less risk of pro-employer bias than the municipality's civil service commission." *Bracey v. City of Killeen*, 417 S.W.3d 94, 99 (Tex. App.—Austin 2013, no pet.); *see City of Pasadena v. Smith*, 292 S.W.3d 14, 15 & n.8 (Tex. 2009).

5

A hearing examiner's decision is "final and binding on all parties." *Id.* § 143.057(c). A party may appeal to the district court, but "[a] district court may hear an appeal of a hearing examiner's award only on the grounds that the [hearing examiner[3]] was without jurisdiction or exceeded its jurisdiction or that the order was procured by fraud, collusion, or other unlawful means."[4] *Id.* § 143.057(c), (j). As noted, the City appealed the hearing examiner's decision to district court on the grounds that (1) the hearing examiner's decision was procured unlawfully because she relied on evidence outside the hearing, and (2) the examiner exceeded her jurisdiction to the extent she concluded that the fire department's due-process violations compelled her to reinstate O'Neill. O'Neill challenged both of these jurisdictional bases in his plea to the jurisdiction, which the trial court granted. The City challenges this ruling on appeal.

**Standard of Review**

We review de novo a trial court's ruling on a plea to the jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004) (op. on reh'g); *see also State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002) ("Whether a trial court has subject-matter jurisdiction is a legal

---

[3]Although the statute uses the term "arbitration panel" rather than "hearing examiner," the supreme court has held that the term "arbitration panel" includes a hearing examiner. *Smith*, 292 S.W.3d at 19.

[4]Municipalities, not just firefighters and police officers, also enjoy the Act's limited right to appeal hearing-examiner decisions to district court. *See id.* at 17; *City of Houston v. Clark*, 197 S.W.3d 314, 317–24, 317 n.4 (Tex. 2006).

question that we review *de novo*."). A plaintiff must plead facts that affirmatively show trial-court jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). We construe the pleadings liberally in the plaintiff's favor, accept all factual allegations as true, and look to the plaintiff's intent. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012).

But if a jurisdictional plea challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, taking as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Miranda*, 133 S.W.3d at 227–28. If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the factfinder. *Id.* If, however, the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

A plaintiff need not prove its claim in order to prove jurisdiction. *See State v. Lueck*, 290 S.W.3d 876, 884 (Tex. 2009). But if the evidence creates a fact question about a jurisdictional issue that overlaps the merits, then the court cannot grant a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 227–28.

## Procured by Unlawful Means

In support of its appellate issue, the City first asserts that the hearing examiner's decision was procured by unlawful means because she relied on evidence

not presented at the hearing—specifically, her independent Internet research on the side effects of aspirin and Lipitor, both of which Woods testified to taking daily. According to the hearing examiner's research, both medications can cause "unusual bleeding," and Lipitor can "specifically cause nosebleed."

As noted, a hearing examiner's decision must be made on evidence submitted at the hearing. *See* Tex. Loc. Gov't Code Ann. §§ 143.010(g), .053(d); *Smith*, 292 S.W.3d at 20. Accordingly, when a commission or a hearing examiner has considered evidence obtained outside the hearing, courts have concluded that the resulting order was procured unlawfully. *See, e.g.*, *Gish v. City of Austin*, No. 03-14-00017-CV, 2016 WL 2907918, at *2–3 (Tex. App.—Austin May 11, 2016, no pet.) (mem. op.) (reversing grant of jurisdictional plea because there was a fact question about whether hearing examiner considered as evidence document attached to postsubmission brief, even though that document was not referenced in the examiner's written decision); *Steubing v. City of Killeen*, 298 S.W.3d 673, 674–75 (Tex. App.—Austin 2009, pet. denied) (stating that no party contested the district court's determination that hearing examiner's decision was procured by unlawful means after "the examiner stated that when making his determination, he *sua sponte* considered various psychological studies and empirical studies that had not been admitted into evidence"); *Firemen's & Policemen's Civil Serv. Comm'n of City of Galveston v. Bonds*, 666 S.W.2d 242, 244–45 (Tex. App.—Houston [14th Dist.] 1984, writ dism'd) (stating that "[a]ny evidence received outside the bounds set by the statute is illegal, and

8

destroys any presumption that the [c]ommission's order is valid" and holding that even though substantial evidence supported the commission's decision to suspend the officer, the decision must be reversed because the commission considered evidence outside the hearing when the commission was given a packet of materials before the hearing that contained a least one sworn witness statement); *cf. Richardson v. City of Pasadena*, 513 S.W.2d 1, 3–4 (Tex. 1974) (setting aside commission's ruling after determining that commission's posthearing receipt, reading, and use of three affidavits that "bore directly on the essential fact issue in the case" without notice to the police officer violated the officer's procedural due-process rights). Relying on these cases, the City contends that because the hearing examiner relied on an extraneous source regarding Woods's medications' side effects, her decision was procured by unlawful means.

The City's argument hinges on a single sentence in the "Testimony at the Appeal Hearing" section of the hearing examiner's opinion: "Woods admitted that he took aspirin every day, as well as Lipitor, both of which may cause unusual bleeding; Lipitor may also specifically cause nosebleed. See PubMed Health, www.ncbi.nim.nih.gov/pubmedhealth/blog/2015/US National Library of Medicine, side effects of these medications." The City contends that the hearing examiner's Internet research suggests that she determined that the medication—as opposed to O'Neill's striking Woods—could have caused the bleeding. This conclusion, the City

9

argues, undergirded the hearing examiner's final determination that O'Neill's striking Woods was defensive rather than offensive.

O'Neill does not dispute that the information about the side effects of Woods's medication was evidence, that the hearing examiner considered that evidence, or that such consideration was unlawful. Instead, O'Neill argues that the City has mischaracterized the hearing examiner's reliance on the side-effects evidence and that the City's argument reads the word "procured" out of Section 143.057(j) by claiming that the examiner's mere citation to a website listing medication side effects suffices to confer trial-court jurisdiction, even if that information did not affect the examiner's analysis.

The Civil Service Act does not define "procure." The parties do not cite—and we have not found—cases discussing the meaning of the word "procure" as it is used in Section 143.057(j). In construing statutes, our primary objective is to give effect to the legislature's intent. *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018). We rely on the text's plain meaning as expressing that intent unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results. *Id.* When, as here, a word is not statutorily defined, we give that word its common, ordinary meaning unless a more precise definition is apparent from the statutory context or unless the plain meaning yields an absurd result. *See id.* To determine a term's common, ordinary meaning, we typically look first to dictionary definitions. *Id.*

10

In ordinary usage, "procure" means to "to cause to happen or be done" and to "bring about." *Procure*, Webster's Third New International Dictionary 1809 (2002); *accord Procure*, Black's Law Dictionary 1401 (10th ed. 2014) (defining "procure" as "[t]o achieve or bring about (a result)"). With these definitions in mind, we turn to whether the hearing examiner's written decision raises a fact issue on whether that decision was unlawfully procured using evidence submitted outside the hearing.

The hearing examiner ultimately concluded that the slap was defensive and that the evidence did not support the fire chief's finding that the slap's force knocked Woods to his knees and caused his injuries. In reaching these conclusions, the examiner determined in the "Analysis" section of her opinion that Woods was standing when O'Neill struck him with a backhanded slap, which the examiner determined was a defensive move, not a "straight-on, in the face 'sucker punch' as the [c]hief concluded." The examiner went on to state that "[t]he form of the slap" supported O'Neill's claim that he was trying to "remove his children from potential harm" and that a backhanded slap with O'Neill's injured left arm was "compelling evidence" that the slap was a "defensive measure."

The examiner goes on to conclude that it was "highly improbable" that the slap cracked or broke Woods's teeth. She further concluded that it was "more probable than not that Woods's injuries were minor." After falling to his knees, Woods was immediately back on his feet and threatening O'Neill. Woods had only a "slight nosebleed," bruising to the left side of his face, and no noticeable swelling. He was

11

able to stand for 30 minutes while waiting for the ambulance. Woods's injuries were triaged in the emergency room three hours later, and he had no broken bones or brain trauma. He was discharged without treatment for swelling and without pain medication.

In her "Analysis" section, the hearing examiner does not mention the medication-side-effects evidence. Even so, we conclude that based on this evidence, the hearing examiner could well have attributed Woods's bleeding to a cause other than O'Neill's slap, which could have in turn influenced her determination that O'Neill administered a defensive slap and not an offensive "sucker punch." A fact issue thus exists about whether the side-effects evidence led the hearing examiner to decide that the evidence overall did not support the fire chief's findings and conclusions. Accordingly, whether the hearing examiner's opinion was procured through evidence outside the hearing contrary to the Civil Service Act presents a fact question, and the trial court thus erred by granting O'Neill's plea to the jurisdiction on the City's procured-by-unlawful-means claim.[5] *See* Tex. Loc. Gov't Code Ann. §§ 143.010(g), .053(d), .057(j). We thus sustain this part of the City's sole issue.[6]

---

[5]As the Austin Court of Appeals stated in *Gish*,

We express no opinion on the resolution of the fact issue of whether the hearing examiner's opinion was unlawfully procured using evidence submitted outside the hearing, and we express no opinion on the merits of the appeal. We conclude only that the fact question on the jurisdictional issue renders erroneous the trial court's grant

**Exceeds Jurisdiction**

In the remainder of its issue, the City contends that the hearing examiner exceeded her jurisdiction by concluding that her determination that the fire department's investigation violated O'Neill's due-process rights compelled her to reinstate O'Neill. We disagree.

A hearing examiner exceeds her jurisdiction "when [her] acts are not authorized by the Act or are contrary to it, or when they invade the policy-setting realm protected by the nondelegation doctrine." *City of Waco v. Kelley*, 309 S.W.3d 536, 542 (Tex. 2010) (quoting *Smith*, 292 S.W.3d at 21). The City does not argue on appeal (and did not plead or argue in the trial court) that the hearing examiner's acts violated the nondelegation doctrine. Thus, we restrict our review to whether the hearing

---

of the . . . plea to the jurisdiction regarding the Chapter 143 claim on the materials submitted.

2016 WL 2907918, at *3.

[6]On appeal, the City also argues that the award was procured by unlawful means because the hearing examiner's award "reflected a source [the examiner] consulted in order to discount the testimony of credible witnesses who were present at the hearing and available for questioning." This source was an article from the *Stanford Journal of Legal Studies* regarding the limitations of eyewitness testimony. *See* Laura Engelhardt, *The Problem with Eyewitness Testimony: Commentary on a talk by George Fisher & Barbara Tversky*, 1 Stan. J. Legal Stud. 25 (1999). The City's pleading, however, limited its procured-by-unlawful-means claim to the hearing examiner's consideration of the medication-side-effects evidence. Because the City's pleadings were limited to the medication-side-effects evidence and because we conclude that the hearing examiner's consideration of that evidence is sufficient to raise a fact issue on this jurisdictional issue, we will not address this argument.

examiner's acts were unauthorized by the Civil Service Act or were contrary to it. *See id.*

As noted, the Civil Service Act gave the hearing examiner discretion to restore O'Neill to his "former position or status in the department's classified service." Tex. Loc. Gov't Code Ann. § 143.053(e)(3). Additionally, the Act requires civil-service commissions administering it to adopt and publish "rules necessary for the proper conduct of commission business." *Id.* § 143.008(a). In accordance with Section 143.008, the City's civil-service commission has adopted rules and regulations for the administration of the City's civil-service system. *See generally* City of Fort Worth, Tex., *Civil Service Rules & Regulations*, http://fortworthtexas.gov/hr/civilservice/ (last visited Jan. 15, 2020). Among them is Rule 13.090, which provides that "[g]enerally, the determinative issues to be considered and determined by the disciplinary action appeal process" include whether "the employee receive[d] reasonable or appropriate 'due process' in the Department's disciplinary process." *Id.* at Rule 13.090(2).

In her written decision, the hearing examiner evaluated whether the fire department afforded O'Neill the requisite due process during the disciplinary process. She determined that the department did not fully investigate the facts and allegations and did not give O'Neill an adequate opportunity to respond to the allegations. The hearing examiner concluded that "[t]he total and seemingly intentional failure of [Fort Worth Fire Department] Professional Standards to afford [O'Neill] his due[-]process

14

rights is sufficient on its own to grant the appeal and overturn the indefinite suspension entirely."

The City asserts that because of these "perceived shortcomings," the hearing examiner "reasoned that she was compelled to reinstate O'Neill." The City argues that because "[n]othing in the Act required or authorized her to effectively render a default judgment as an automatic penalty for allegedly violating [O'Neill]'s due[-]process rights," the hearing examiner exceeded her jurisdiction "[b]y fashioning her own remedy to cure perceived procedural defects with the investigation."

Contrary to the City's argument, the hearing examiner's decision does not say that the hearing examiner was compelled or required to reinstate O'Neill. She found merely that the due-process violations were sufficient for her to order his reinstatement—a remedy the Civil Service Act expressly authorizes. *See* Tex. Loc. Gov't Code Ann. § 143.053(e)(3). Nothing in the Act prohibits hearing examiners from reinstating a firefighter based on a finding that the department did not give due process during the disciplinary process. Moreover, the City's civil-service rules and regulations provide that among the "determinative" issues for the hearing examiner to consider and determine is whether "the employee receive[d] reasonable or appropriate 'due process' in the Department's disciplinary process." *Civil Service Rules & Regulations*, Rule 13.090(2), *supra.* The hearing examiner expressly referred to this Rule twice in her written decision, and the City makes no argument against this rule's validity or applicability.

15

Accordingly, we conclude that because the hearing examiner's acts were not unauthorized by the Civil Service Act or contrary to it, the City has failed to raise a fact issue about whether the hearing examiner exceeded her jurisdiction. The trial court thus did not err by granting O'Neill's jurisdictional plea based on the City's exceeded-jurisdiction claim. We overrule this part of the City's issue.

## Conclusion

Having sustained the City's issue in part, we reverse the trial court's order granting O'Neill's plea to the jurisdiction on the City's procured-by-unlawful-means claim and remand that claim to the trial court for further proceedings. We affirm the remainder of the trial court's order.[7]

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: January 23, 2020

---

[7]The City asserts that if we reverse the trial court's order granting O'Neill's plea to the jurisdiction, "it would also be appropriate for [us] to find that it is within the trial court's discretion to review the merits and render a decision." That issue is not before us in this appeal, and so any decision now would be an improper advisory opinion.